IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-24000-BLOOM/Otazo-Reyes

ROTHFOS CORPORATION,
a New York Corporation,

    Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,
a Florida Limited Liability Company,

    Defendant.

# FIRST AMENDED COMPLAINT

Plaintiff Rothfos Corporation ("Rothfos" or "Plaintiff"), hereby brings this civil action against Defendant H&H Coffee Investments, LLC ("H&H" or "Defendant"), and avers as follows:

## INTRODUCTION

1. Rothfos Corporation is the largest green coffee importer in North America and imports 10% of North America's coffee. As part of its business, Rothfos buys green coffee beans grown in Central America (and elsewhere), and then sells them to coffee roasters across North America.

2. Rothfos paid over $21.48 million to CLR Roasters, LLC ("CLR") for the delivery of 147,950 bags of green coffee beans from Nicaragua from the 2021–2022 coffee harvest season. CLR, however, failed to deliver all but a small portion of the coffee due. To date, CLR delivered only 11,275 bags of coffee, with a value of $2.42 million. CLR presently owes Rothfos over $19.05 million worth of coffee that was paid for, but not delivered.

3. Defendant H&H—which is owned and controlled by a major stakeholder and high-ranking employee of CLR—guaranteed CLR's contractual obligations to Rothfos for the 2021–2022 season. The guarantee is an absolute, unconditional, and irrevocable guarantee. To secure H&H's obligations under the guaranty, H&H executed a mortgage in favor of Rothfos for a warehouse in Miami-Dade County.

4. Because CLR breached its contractual duty to deliver 136,675 bags of coffee to Rothfos, and Defendant failed to cure the default, Plaintiff brings this action against H&H for breach of the guaranty; foreclosure on H&H's warehouse and other collateral; and enforcement of an assignment of the warehouse's rents.

## **PARTIES**

5. Plaintiff is a New York corporation, with its principal office in Hoboken, New Jersey.

6. Defendant is a Florida limited liability company, with its principal office in Miami-Dade County, Florida.

7. Alain Piedra Hernandez is the managing member of Defendant. He is a resident of, citizen of, and domiciled in the State of Florida.

8. Plaintiff has conducted a diligent inquiry in an attempt to determine whether Defendant has other members, including, *inter alia*, by reviewing the documents in Plaintiff's possession and the documents publicly available from the Florida Department of State, Division of Corporations. Despite Plaintiff's diligent inquiry, Plaintiff has been unable to determine and is without knowledge as to whether there are any other members of Defendant, and, if such persons exist, as to those persons' residency, citizenship, and domicile. Because Defendant is a private

limited liability company, that information is not available to Plaintiff and is exclusively in the possession of Defendant and its members.

9. Defendant owns the Mortgaged Real Property and appurtenant personal and intangible property that is the subject of this lawsuit.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

11. This Court has personal jurisdiction over Defendant because its principal place of business is in Miami-Dade County, Florida, and the guaranty and mortgage provide that Miami-Dade County, Florida is the exclusive forum for this dispute.

12. The warehouse that is the subject of this action is located at 7355 N.W. 41st Street, Miami, Florida 33166 (the "Mortgaged Real Property").

13. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant is a resident company in this judicial district, the property that is subject to this action is located in this judicial district, and the guaranty and mortgage provide that Miami-Dade County, Florida is the exclusive forum for this dispute.

## FACTUAL BACKGROUND

**A. Rothfos Paid CLR over $21 Million for 147,950 Bags of Green Coffee, but CLR has Substantially Failed to Deliver.**

14. In the years prior to the commencement of this lawsuit, Rothfos purchased Nicaraguan coffee from CLR for resale to coffee roasters in North America.

15. Between February 2019 and December 2021, Rothfos submitted 49 purchase orders for 147,950 bags of coffee to be delivered to Rothfos, with delivery to be made between October

2019 and February 2022 (the "CLR Purchase Orders"). Copies of the CLR Purchase Orders are attached hereto as **Composite Exhibit A**, and are incorporated herein by reference.

16. The CLR Purchase Orders incorporated the terms of the Green Coffee Association, Inc.'s Terms and Conditions (the "Green Coffee Terms and Conditions"). Copies of the relevant Green Coffee Terms and Conditions are attached hereto as **Composite Exhibit B**, and are incorporated herein by reference.

17. Between February 2019 and March 2022, Rothfos made advance payments to CLR in the total amount of $21,479,316.08 for the coffee to be delivered under the terms of the CLR Purchase Orders and the Green Coffee Terms and Conditions (together, the "CLR Purchase Contracts").

18. By December 2021, CLR had been habitually delinquent on its obligation to deliver coffee to Rothfos as required by the CLR Purchase Contracts. For example, twenty-seven of the CLR Purchase Contracts required coffee to be delivered to Rothfos by or before December 2021, but as of the end of December 2021, CLR had failed to deliver any coffee whatsoever under twenty-two of those contracts and had made only partial delivery under the remaining five contracts.

19. Accordingly, on or about January 7, 2022, Rothfos and CLR entered into an agreement regarding CLR's past-due and future obligations (the "CLR Workout Agreement"). A copy of the CLR Workout Agreement is attached hereto as **Exhibit C**, and is incorporated herein by reference.

20. Pursuant to the CLR Workout Agreement, Rothfos and CLR agreed to "roll over" to the 2021–2022 crop year approximately 33,550 bags of open forward purchase contracts due from CLR that had been prepaid for by Rothfos, which had an approximate value of $6.11 million.

To satisfy this obligation, CLR was required to ship to Rothfos no less than seven containers of coffee per month until the balance was satisfied.

21. Additionally, pursuant to the CLR Workout Agreement, CLR was required to ship to Rothfos 233 additional containers of coffee from the 2021–2022 crop year for Rothfos' payment of $19,725,000, less certain credits owed to CLR. To satisfy this obligation, CLR was required to ship to Rothfos 90 to 120 additional containers of coffee per month.

22. The CLR Workout Agreement further required CLR to "undertake to ship coffee in the amount paid by Rothfos Corporation pursuant to terms and conditions of the [Green Coffee Association] contracts," i.e., the CLR Purchase Contracts.

23. Following the parties' execution of the CLR Workout Agreement, CLR again failed to deliver coffee to Rothfos by the deadlines set forth in the CLR Purchase Contracts and the CLR Workout Agreement.

24. As of the date of this First Amended Complaint, CLR has delivered to Rothfos only 11,275 bags of coffee due under the relevant contracts with a value of $2,424,940.08, including:

    a. 1,925 bags of coffee with a value of $261,258.67 delivered under Purchase Order No. 38905;

    b. 1,110 bags of coffee with a value of $117,046.43 delivered under Purchase Order No. 39783;

    c. 825 bags of coffee with a value of $169,194.42 delivered under Purchase Order No. 40181;

    d. 4,950 bags of coffee with a value of $1,105,448.69 delivered under Purchase Order No. 40866; and

    e. 2,475 bags of coffee with a value of $771,991.87 delivered under Purchase Order No. 42933.

25. As of the date of this First Amended Complaint, CLR remains delinquent on its obligations under the CLR Purchase Contracts and the CLR Workout Agreement to deliver to Rothfos 136,675 bags of coffee for which Rothfos paid **$19,054,376**.

  **B.**  **The H&H Guaranty and Mortgage**

26. On or about December 24, 2021, H&H executed and delivered to Rothfos a Corporate Guaranty (the "Guaranty") of certain of CLR's obligations, as described below. A copy of the Guaranty is attached hereto as **Exhibit D**, and is incorporated herein by reference.

27. H&H is a company that is owned and controlled by Alain Piedra Hernandez, a major stakeholder and high-ranking employee of CLR, who is involved with CLR's coffee business in Nicaragua.

28. Because of CLR's history of non-performance, Rothfos required the execution of the Guaranty by H&H and the grant of a mortgage over the Mortgaged Real Property as a precondition to Rothfos's agreement to extend further credit to CLR and to postpone the enforcement of its rights against CLR for CLR's prior defaults.

29. Pursuant to the Guaranty, H&H absolutely, unconditionally, and irrevocably guaranteed all present and future obligations, liabilities, covenants, and agreements of CLR to Rothfos for the purchase of coffee or for any monetary funded advance, together with interest, costs, expenses, and fees, for the 2021–2022 coffee harvest season, as described more particularly therein.

30. A small minority of the CLR Purchase Contracts initially called for the delivery of coffee prior to the 2021–2022 coffee harvest. However, because Rothfos and CLR agreed to "roll over" those CLR Purchase Contracts to the 2021–2022 crop year pursuant to the CLR Workout Agreement, those CLR Purchase Contracts also became subject to H&H's Guaranty.

31. On December 24, 2021, to secure H&H's obligations under the Guaranty, H&H executed a Mortgage in favor of Rothfos for the Mortgaged Real Property (including, *inter alia*, all structures, buildings, and improvements thereon) and appurtenant personal and intangible property, as more particularly described therein (the "Mortgage").  A copy of the Mortgage is attached hereto as **Exhibit E**, and is incorporated herein by reference.

32. On June 1, 2022, the Mortgage was recorded in Official Records Book 33216, at Page 4202, of the Public Records of Miami-Dade County, Florida.

33. The appurtenant personal and intangible property subject to the Mortgage includes, *inter alia*: personal property, intangibles and other collateral affixed to, or associated with, the Mortgaged Real Property, including: fixtures, furniture, furnishings, equipment, machinery, inventory, materials, permits, licenses, trade names, trademarks, and personal property located in or on the Mortgaged Real Property, or in or on its buildings, structures, or improvements, as well as all leases and leasehold interests, agreements of sale, other agreements, contract rights, accounts, receivables, and general intangibles connected to the Mortgaged Real Property, as more particularly described in the Mortgage (collectively, the "Personal and Intangible Property Collateral").

34. Pursuant to Paragraph 8 of the Mortgage (the "Assignment of Rents Provision"), Defendant assigned to Plaintiff all rights, title, and interests of Defendant to all rents, royalties, issues, profits, revenue, income, proceeds, licenses, and other benefits derived from the Mortgaged Property (collectively, the "Rents"), as more particularly described therein.

35. On October 24, 2022, in respect of the Mortgage, Plaintiff filed a UCC-1 Financing Statement with the Florida Secured Transaction Registry, under File Number 202203407008 (the "Financing Statement").  On October 25, 2022, the Financing Statement was

recorded in Official Records Book 33436, at Page 2665, of the Public Records of Miami-Dade County, Florida. A copy of the Financing Statement is attached hereto as **Exhibit F**, and is incorporated herein by reference.

36. Plaintiff owns and holds the Guaranty, the Mortgage, and the Financing Statement (collectively, the "H&H Loan Documents"). Plaintiff has not negotiated, transferred, or assigned the H&H Loan Documents, or any of its rights or interests thereunder.

37. H&H's execution of and/or agreement to the H&H Loan Documents served as material inducements for Rothfos's extension of additional credit to CLR and postponement of the enforcement of its rights against CLR for CLR's prior defaults. Rothfos would not have extended credit to CLR after December 24, 2021 or made other accommodations to CLR if not for H&H's execution of and/or agreement to the H&H Loan Documents.

38. Plaintiff maintains a lien on and a security interest in the Mortgaged Real Property, the Personal and Intangible Property Collateral, and the Rents, as more particularly described in the Mortgage, which is paramount and superior to any rights, title, or interests of Defendant therein.

    **C.**    **Rothfos' Pre-Suit Notice of Default and Demand for Rents**

39. On September 29, 2022, Rothfos, through counsel, sent a letter to CLR and H&H providing them with final notice of default under the CLR Purchase Contracts and the CLR Workout Agreement and demanding payment of all outstanding amounts owed thereunder.

40. As of the date of this First Amended Complaint, following their receipt of the September 29, 2022 letter, CLR and H&H have yet to pay any additional amounts owed to Rothfos under the CLR Purchase Contracts, the CLR Workout Agreement, or the Guaranty.

41. On November 30, 2022, Plaintiff sent a letter to H&H demanding, pursuant to Florida Statute § 697.07, turnover and the immediate payment to Plaintiff of all Rents thereafter collected from the Mortgaged Real Property until such time as the underlying obligations were satisfied in full or a foreclosure action was completed (the "Demand for Rents Letter"). A copy of the Demand for Rents Letter is attached hereto as **Exhibit G**, and is incorporated herein by reference.

42. As of the date of this First Amended Complaint, following its receipt of the Demand for Rents Letter, H&H has failed to turn over to Rothfos any Rents.

43. Plaintiff has fully performed its obligations under the CLR Purchase Contracts, the CLR Workout Agreement, and the H&H Loan Documents, including by providing CLR with funds for coffee in the total amount of $21,479,316.08.

44. Defendant owes Plaintiff $19,054,376 for coffee purchased by, but not delivered to, Rothfos for the 2021–2022 coffee harvest season, plus accrued and accruing interest, costs, and expenses owed under the CLR Purchase Contracts, the CLR Workout Agreement, and the H&H Loan Documents.

45. Plaintiff has retained the undersigned attorneys to represent it in this action and has promised to pay them a reasonable fee for professional services rendered, plus the reimbursement of costs incurred. Plaintiff is entitled to recover these attorneys' fees and legal costs from Defendant under the terms of the Guaranty and the Mortgage.

46. All conditions precedent to Plaintiff's pursuit of the claims set forth herein have been performed, waived, or otherwise satisfied.

## COUNT I
### Damages for Breach of Guaranty

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 above as though fully set forth herein, and further states as follows:

48. On or about December 24, 2021, H&H executed and delivered to Rothfos the Guaranty.

49. Pursuant to the Guaranty, H&H absolutely, unconditionally, and irrevocably guaranteed all present and future obligations, liabilities, covenants, and agreements of CLR to Rothfos for the purchase of coffee or for any monetary funded advance, together with interest, costs, expenses, and fees, for the 2021–2022 coffee harvest season.

50. CLR breached and is in default of its obligation to deliver to Rothfos 136,675 bags of coffee from the 2021–2022 coffee harvest season for which Rothfos paid $19,054,376.

51. Defendant has failed to cure CLR's breach or to pay Rothfos for the value of the coffee that CLR failed to deliver from the 2021–2022 coffee harvest season.

52. Defendant breached and is in default under the Guaranty.

53. Plaintiff fully performed its obligations under the Guaranty, including by extending credit to CLR after the date thereof.

54. As of the date of this First Amended Complaint, Defendant owes Plaintiff the principal sum of $19,054,376, together with accrued and accruing interest, attorneys' fees, and other costs, fees, and charges that are due and owing.

55. Rothfos has suffered economic damages caused by H&H's failure to pay all amounts owed under the Guaranty, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in favor of Plaintiff and against Defendant, awarding it:

      a. Compensatory and consequential damages;

      b. Attorneys' fees, legal expenses, and court fees and costs;

      c. Pre- and post-judgment interest; and

      d. Such other and further relief as may be just and proper.

## COUNT II
### Foreclosure on Mortgaged Real Property

56. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 above as though fully set forth herein, and further states as follows:

57. Defendant is the fee simple owner of the Mortgaged Real Property. Defendant's title to the Mortgaged Real Property is subject to the lien of Plaintiff's Mortgage.

58. The Mortgage serves as security for Defendant's performance of its obligations under the Guaranty.

59. Pursuant to the Guaranty, H&H absolutely, unconditionally, and irrevocably guaranteed all present and future obligations, liabilities, covenants, and agreements of CLR to Rothfos for the purchase of coffee or for any monetary funded advance, together with interest, costs, expenses, and fees, for the 2021–2022 coffee harvest season.

60. CLR breached and is in default of its obligation to deliver to Rothfos 136,675 bags of coffee from the 2021–2022 coffee harvest season for which Rothfos paid $19,054,376.

61. Defendant has failed to cure CLR's breach or to pay Rothfos for the value of the coffee that CLR failed to deliver from the 2021–2022 coffee harvest season.

62. Defendant breached and is in default under the Guaranty and the Mortgage.

63. Plaintiff fully performed its obligations under the Guaranty and the Mortgage, including by extending credit to CLR after the date thereof.

64. As of the date of this First Amended Complaint, Defendant owes Plaintiff the principal sum of $19,054,376, together with accrued and accruing interest, attorneys' fees, and other costs, fees, and charges that are due and owing.

65. Any rights and interests of Defendant in the Mortgaged Real Property are subordinate, inferior, and junior to Plaintiff's rights and interests in the Mortgaged Real Property.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in favor of Plaintiff and against Defendant as follows:

a. Foreclosing Defendant's rights and interests in the Mortgaged Real Property;

b. Adjudicating all of Defendant's rights and interests in the Mortgaged Real Property to be subordinate, inferior, and junior to the rights and interests of Plaintiff;

c. Ordering the Mortgaged Real Property to be sold to satisfy Plaintiff's claim and allowing Plaintiff to credit bid at the auction up to the total amount of Defendant's debt owed to Plaintiff;

d. Entering a deficiency judgment against Defendant if the proceeds from the sale of the Mortgaged Real Property are not sufficient to satisfy the debt due and owing;

e. Awarding Plaintiff its attorneys' fees, legal expenses, and court fees and costs;

f. Awarding Plaintiff pre- and post-judgment interest; and

g. Awarding Plaintiff such other and further relief as may be just and proper.

## COUNT III
**<u>Foreclosure on Personal and Intangible Property Collateral</u>**

66. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 above as though fully set forth herein, and further states as follows:

67. Defendant is the owner of the Personal and Intangible Property Collateral. Defendant's title to the Personal and Intangible Property Collateral is subject to the lien of Plaintiff's Mortgage.

68. The Mortgage—which constitutes a security agreement under the Uniform Commercial Code—serves as security for Defendant's performance of its obligations under the Guaranty.

69. Pursuant to the Guaranty, H&H absolutely, unconditionally, and irrevocably guaranteed all present and future obligations, liabilities, covenants, and agreements of CLR to Rothfos for the purchase of coffee or for any monetary funded advance, together with interest, costs, expenses, and fees, for the 2021–2022 coffee harvest season.

70. CLR breached and is in default of its obligation to deliver to Rothfos 136,675 bags of coffee from the 2021–2022 coffee harvest season for which Rothfos paid $19,054,376.

71. Defendant has failed to cure CLR's breach or to pay Rothfos for the value of the coffee that CLR failed to deliver from the 2021–2022 coffee harvest season.

72. Defendant breached and is in default under the Guaranty and the Mortgage.

73. Plaintiff fully performed its obligations under the Guaranty and the Mortgage, including by extending credit to CLR after the date thereof.

74. As of the date of this First Amended Complaint, Defendant owes Plaintiff the principal sum of $19,054,376, together with accrued and accruing interest, attorneys' fees, and other costs, fees, and charges that are due and owing.

75. Any rights and interests of Defendant in the Personal and Intangible Property Collateral are subordinate, inferior, and junior to Plaintiff's rights and interests in the Personal and Intangible Property Collateral.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in favor of Plaintiff and against Defendant as follows:

    a. Foreclosing Defendant's rights and interests in the Personal and Intangible Property Collateral;

    b. Adjudicating all of Defendant's rights and interests in the Personal and Intangible Property Collateral as subordinate, inferior, and junior to the rights and interests of Plaintiff;

    c. Ordering the Personal and Intangible Property Collateral to be sold to satisfy Plaintiff's claim and allowing Plaintiff to credit bid at the auction up to the total amount of Defendant's debt owed to Plaintiff;

    d. Entering a deficiency judgment against Defendant if the proceeds from the sale of the Personal and Intangible Property Collateral are not sufficient to satisfy the debt due and owing;

    e. Awarding Plaintiff its attorneys' fees, legal expenses, and court fees and costs;

    f. Awarding Plaintiff pre- and post-judgment interest; and

    g. Awarding Plaintiff such other and further relief as may be just and proper.

## COUNT IV
## Enforcement of Assignment of Rents Provision under Florida Statute § 697.07

76. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 above as though fully set forth herein, and further states as follows:

77. Upon information and belief, Defendant collects Rents generated from its ownership of the Mortgaged Real Property. Those Rents are subject to the lien of Plaintiff's Mortgage, including via the Assignment of Rents Provision.

78. The Mortgage (including the Assignment of Rents Provision)—which constitutes a security agreement under the Uniform Commercial Code—serves as security for Defendant's performance of its obligations under the Guaranty.

79. Pursuant to the Guaranty, H&H absolutely, unconditionally, and irrevocably guaranteed all present and future obligations, liabilities, covenants, and agreements of CLR to Rothfos for the purchase of coffee or for any monetary funded advance, together with interest, costs, expenses, and fees, for the 2021–2022 coffee harvest season.

80. CLR breached and is in default of its obligation to deliver to Rothfos 136,675 bags of coffee from the 2021–2022 coffee harvest season for which Rothfos paid $19,054,376.

81. Defendant has failed to cure CLR's breach or to pay Rothfos for the value of the coffee that CLR failed to deliver from the 2021–2022 coffee harvest season.

82. Defendant breached and is in default under the Guaranty and the Mortgage.

83. Plaintiff fully performed its obligations under the Guaranty and the Mortgage, including by extending credit to CLR after the date thereof.

84. As of the date of this First Amended Complaint, Defendant owes Plaintiff the principal sum of $19,054,376, together with accrued and accruing interest, attorneys' fees, and other costs, fees, and charges that are due and owing.

85. On November 30, 2022, Plaintiff sent the Demand for Rents Letter to Defendant, demanding pursuant to Florida Statute § 697.07, turnover and the immediate payment to Plaintiff of all Rents thereafter collected from the Mortgaged Real Property until such time as the underlying obligations were satisfied in full or a foreclosure action was completed.

86. Following its receipt of the Demand for Rents Letter, Defendant failed to forward the Rents to Plaintiff, or to instruct tenants to forward the Rents to Plaintiff, or to deposit the Rents into the Registry of the Court.

87. Any rights and interests of Defendant in the Rents are subordinate, inferior, and junior to Plaintiff's rights and interests in the Rents.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in favor of Plaintiff and against Defendant as follows:

    a. Adjudicating all of Defendant's rights and interests in the Rents as subordinate, inferior, and junior to the rights and interests of Plaintiff;

    b. Ordering Defendant to account to Plaintiff and the Court for all Rents derived from the Mortgaged Real Property since the date of the Demand for Rents Letter;

    c. Ordering the Rents to be paid to Plaintiff, or, alternatively, into the Registry of the Court, pursuant to Florida Statute § 697.07, to be applied towards Plaintiff's claim;

    d. Awarding Plaintiff its attorneys' fees, legal expenses, and court fees and costs;

    e. Awarding Plaintiff pre- and post-judgment interest; and

    f. Awarding Plaintiff such other and further relief as may be just and proper.

Date:  December 14, 2022　　　　　　　　　Respectfully submitted,

By:  /s/ *Jason P. Hernandez*
JASON P. HERNANDEZ
Fla. Bar No. 18598
jhernandez@stearnsweaver.com
MATTHEW M. GRAHAM
Florida Bar No. 86764
mgraham@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
   ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida  33130
Telephone: (305) 789-3200
Facsimile: (305) 789-2638

*Counsel for Plaintiff*