**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-24000-BLOOM/OTAZO-REYES**

ROTHFOS CORPORATION,
a New York Corporation,

      Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,
a Florida Limited Liability Company,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Defendant H&H Coffee Investments, LLC's ("H&H" or "Defendant") Motion to Compel Arbitration and Dismiss (hereafter, "Motion") [D.E. 13]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 18]. The undersigned held a hearing on this matter on March 14, 2023 (hereafter, "Hearing") [D.E. 25]. For the reasons set forth below, the undersigned respectfully recommends that Defendant's Motion be DENIED.

**BACKGROUND**

In its Amended Complaint, Plaintiff Rothfos Corporation ("Rothfos" or "Plaintiff") alleges that, between February 2019 and December 2021, it entered into 49 purchase orders with third-party CLR Roasters, LLC ("CLR") for 147,950 bags of Green Coffee beans to be delivered by CLR between October 2019 and February 2022 (hereafter, "CLR Purchase Contracts"). See Am. Compl. [D.E. 9 ¶ 15]. H&H is not a party to the CLR Purchase Contracts. See CLR Purchase Contracts [D.E. 9-1]. The CLR Purchase Contracts incorporate the Green Coffee Association Terms and Agreement ("GCA Terms"), which require the arbitration of disputes as follows:

> All controversies relating to, in connection with, or arising out of this contract, its modification, making or the authority or obligations of the signatories, and whether involving the principals, agents, brokers, or others who actually subscribe hereto, shall be settled by arbitration in accordance with the "Rules of Arbitration" of the Green Coffee Association Inc., as they exist at the time of the arbitration (including provisions as to payment of fees and expenses). Arbitration is the sole remedy hereunder, and it shall be held in accordance with the laws of New York State, and judgment of any award may be entered in the court of that State, or in any other court of competent jurisdiction.

See Am. Compl. [D.E. 9 at ¶ 16]; GCA Terms [D.E. 9-2 at 29].

Rothfos further alleges that it made advance cash payments to CLR in the amount of $21,479,316.08 for the delivery of coffee beans but CLR failed to deliver in accordance with the CLR Purchase Contracts. See Am. Compl. [D.E. 9 ¶¶ 17–18]. As a result, on January 7, 2022, Rothfos and CLR entered into a workout agreement regarding CLR's past-due and future obligations whereby Rothfos and CLR agreed to "roll over" to the 2021–2022 crop year, approximately 33,550 bags of coffee beans that had been prepaid by Rothfos (hereafter, "CLR Workout Agreement"). Id. ¶ 19–20. The CLR Workout Agreement also required CLR to ship to Rothfos 233 additional containers of coffee beans from the 2021–2022 crop year and incorporated the terms of the CLR Purchase Contracts, including the arbitration provision from the GCA Terms. Id. ¶¶ 19–22. Rothfos further alleges that CLR did not satisfy its contractual obligations under the CLR Workout Agreement because it failed to deliver 136,675 bags of coffee beans with a value of $19,054,367. Id. ¶¶ 24–25.

Rothfos further alleges that, thereafter, H&H executed a Corporate Guaranty ("Guaranty") as a condition to Rothfos extending further credit to CLR. Id. ¶¶ 26, 28. The Guaranty provides, in relevant part, that H&H "absolutely, unconditionally and irrevocably guarantees as primary obligor and not merely as surety, the punctual payment, when due . . . of all present and future obligations, liabilities, covenants and agreements required to be observed, performed, or paid by CLR" and shall apply to CLR's obligations for "purchases and advances by [Rothfos] for the 2021-

22 season unless extended by agreement of the parties[.]" See Guaranty [D.E. 9-4 ¶¶ 1, 6.g]. The Guaranty also provides that: "[H&H] agrees that [Rothfos] need not attempt to collect any Obligations from CLR or any other entity or to realize upon any collateral to enforce the obligations hereunder due [Rothfos] by CLR", and that "[t]he obligations of [H&H] under this Guaranty are independent of the Obligations and [Rothfos] may bring a separate action or actions against CLR and or [H&H] the Guarantor or any other guarantors." Id. ¶ 2. Rothfos and H&H also stipulated in the Guaranty that the "[m]andatory venue for any legal proceeding between [Rofthfos] and [H&H] shall be in Miami-Dade County, Florida." Id. ¶ 6.d.

Rothfos further alleges that it provided H&H with notice of CLR's default, but that H&H failed to cure the default. See Am. Comp. [D.E. 9 ¶¶ 39, 40]. As a result, Rothfos brings this lawsuit against H&H for breach of the Guaranty and to foreclose on mortgaged property that was secured thereunder. Id. at 10–12. In response, H&H seeks to compel arbitration "of the dispute as it relates to the CLR Purchase Contracts" and dismiss the case, or alternatively, to stay the litigation pending arbitration. See Motion [D.E. 13 at 11].

## APPLICABLE LAW

Arbitration is a matter of contract and the "'validity of an arbitration agreement is generally governed by the Federal Arbitration Act.'" Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008). Moreover, "the Federal Arbitration Act's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate." Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011) (internal quotation marks omitted). Thus, a defendant seeking to compel arbitration must demonstrate that "(a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert, 544 F.3d at 1995. Further, the "issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force

3

a signatory to arbitrate a dispute between them is controlled by state law." Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc., 845 F.3d 1351, 1354 (11th Cir. 2017).

As a basic principle, "a party may not be compelled to arbitrate if [it] did not agree to do so." Id. at 1356 (internal quotations and citation omitted). "An obligation to arbitrate is based on consent, and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration." Betancourt v. Green Tree Servicing, LLC, No. 8:13-CV-2759-T-30AEP, 2013 WL 6644560, at *1 (M.D. Fla. Dec. 17, 2023). However, under Florida law, there are three circumstances in which a non-signatory is permitted to compel arbitration: (1) equitable estoppel; (2) agency or related principles; (3) third-party beneficiary. AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC, 608 F. Supp. 2d 1331, 1341 (S.D. Fla. 2009). In its Motion, H&H only invokes equitable estoppel.

## DISCUSSION

H&H limits its request for arbitration to the issue of whether non-party CLR defaulted on the CLR Purchase Contracts. See Defendant's Reply in Support of its Motion to Compel ("Reply") [D.E. 15 at 4, 7]. H&H argues that, although it is not a signatory to the CLR Purchase Contracts, it can nevertheless enforce the arbitration clause contained therein under the principle of equitable estoppel because Rothfos' claims against H&H "rely on the terms of the CLR Purchase Contracts." See Motion [D.E. 13 at 6, 9]. However, Rothfos counters that equitable estoppel is inapplicable because the Guaranty forms the basis for this lawsuit and is a "separate and distinct contract" from the CLR Purchase Contracts that does not mention, much less require, arbitration. See Plaintiff's Opposition to Defendant's Motion to Compel (hereafter, "Response") [D.E. 14 at 12, 19].

H&H relies on Armas v. Prudential Sec., Inc., 842 So. 2d 210 (Fla. 3d DCA 2003) and Cunningham v. Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So. 2d 940 (Fla. 3d DCA 2000). Id. at 8–10 for its argument that a non-signatory can compel arbitration through equitable estoppel.

4

In Armas, the court compelled arbitration on equitable estoppel grounds after finding that the plaintiff's claims against the non-signatory relied on an underlying contract that contained a broad arbitration clause. Armas, 842 So. 2d at 212.  Specifically, the court found that the phrase "arising out of or related to" in the arbitration provision encompassed the controversy between the parties and that the plaintiff's claims arose out of the same factual allegations of concerted conduct by the non-signatory and signatories.  Id.  Similarly, in Cunningham, the court compelled arbitration on the grounds that the plaintiff's claims "arose out of" the underlying contract that contained the same broad arbitration provision as in Armas, even though there was no signed contract directly between the parties. Cunningham, 776 So. 2d at 942.  H&H also relies on Poole v. People's Choice Home Loan, Inc., No. 3:06-cv-327-J-33MMHH, 2007 WL 865526, at *3 (M.D. Fla. Mar. 21, 2007) and Gunson v. BMO Harris Bank, N.A., 43 F. Supp. 3d 1396 (S.D. Fla. 2014), where, as in Armas and Cunningham, the courts compelled arbitration because the plaintiff's claims relied on and were necessarily related to an underlying contract containing the same broad arbitration language.  Poole, 2007 WL 865526, at * 3; Gunson, 43 F. Supp. 3d at 1401.  According to H&H, the arbitration provision in the CLR Purchase Contracts compels arbitration here because it contains the same "arising out of or related to" language present in Armas, Cunningham, Poole, and Gunson.  See Motion [D.E. 13 at 7–9].

      However, H&H's analogy to those cases falls short given that they involved a single contract containing an arbitration clause, whereas here Rothfos and H&H are parties to a separate contract—the Guaranty—which does not include an arbitration clause.  Indeed, the Guaranty expressly states that H&H's obligations under the Guaranty "are independent" of CLR's obligations to Rothfos and that Rothfos "need not attempt to collect any Obligations from CLR . . . to enforce the obligations hereunder".  See Guaranty [D.E. 9-4 ¶ 2].  Moreover, the Guaranty's venue clause states that: "Mandatory venue for any legal proceeding between [Rothfos] and

5

[H&H] shall be in Miami-Dade County, Florida." Id. at ¶ 6.d. In contrast, the arbitration clause incorporated in the CLR Purchase Contracts stipulates that the location of arbitration hearings "will default to New York" absent an alternative arbitration location specified by Rothfos and CLR, which they did not elect to do. See GCA Terms [D.E. 9-2 at 29].

More analogous to the case at bar is International Underwriters AG, 533 F.3d at 1345–47, where the Eleventh Circuit denied a motion to compel arbitration because the "central document in the relationship" between the plaintiff and the defendant "did not include an arbitration clause", which was "substantial evidence of their intent not to require arbitration." Id. Likewise, in Lee v. All Florida Construction Co., 662 So. 2d 365, 366 (Fla. 3d DCA 1995), the court held that "[w]here the parties enter into two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration", even if the "two contracts related" to the same subject matter. Id.; see also Perdido Key Island Resort Dev., L.L.P. v. Regions Bank, 102 So. 3d 1, 3 (Fla. 1st DCA 2012) (finding arbitration was not required because the guarantees in that case did not contain arbitration clauses and did not incorporate the terms of the promissory note which did contain an arbitration clause); Harvey, 306 So. 3d at 1249 ("And because the contract sued upon does not incorporate a separate contract that does contain an arbitration clause, the trial court erred in compelling arbitration."). Here, the Guaranty is the "central document" between H&H and Rothfos, which does not contain an arbitration clause or incorporate the terms of the CLR Purchase Contracts; hence, under this line of cases, Rothfos cannot be compelled to arbitrate its dispute with H&H. See Int'l Underwriters AG, 533 F.3d at 1345; Lee, 662 So. 2d at 366; Perdido, 102 So. 3d at 3; Harvey, 306 so. 3d at 1249.

Significantly, H&H could have bargained for the inclusion of an arbitration clause in the Guaranty, but it did not. This "failure to include any reference to arbitration" in the Guaranty,

along with its venue provision, are "substantial evidence" that Rothfos and H&H did not intend to arbitrate disputes arising under the Guaranty. See Int'l Underwriters AG v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1345 (11th Cir. 2008). Moreover, H&H's argument that the Guaranty's venue provision does not pose a barrier to arbitration because the parties can arbitrate by remote technology while being present in Miami-Dade County, Florida, see Reply [D.E. 15 at 7], does not overcome the Guaranty's venue provision. In support of this argument, H&H cites the GCA Rules of Arbitration, which are incorporated by reference into the CLR Purchase Contracts. and provide that: "Technical arbitration hearings can be held in person at any facility deemed acceptable by the arbitrators, or by conference phone call, or internet meeting site. It is not necessary that Arbitrators, Parties, and their legal representatives, and the secretary be physically present in the same location." See GCA Terms [D.E. 9-2 at 29]. However, even if the parties were to arbitrate by remote technology while being physically located in Miami-Dade County, the arbitration "location" would still be New York, the default location specified by the GCA Terms. See id.

Finally, contrary to H&H's argument, the mere allegation in the Amended Complaint that CLR breached the CLR Purchase Contracts does not amount to Rothfos seeking "to hold H&H to the terms of the CLR Purchase Contracts." See Reply [D.E. 15 at 3]. "For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them." Bailey v. ERG Enters., LP, 705 F.3d 1311, 1322 (11th Cir. 2013) (citation omitted). Here, the Guaranty provides that H&H's obligations under the Guaranty "are independent" of CLR's obligations to Rothfos, and that Rothfos may litigate directly against H&H. See Guaranty [D.E. 9-4 ¶ 2]. "[Such] a contract of guaranty is ordinarily separable from the debt of the persons whose debt is guaranteed. The contract of the guarantor is a separate undertaking, in which the principal does not join." 28 Fla. Jur. 2d Guaranty and Suretyship § 2.

7

In summary, given that the plain text of the Guaranty between Rothfos and H&H is evidence of the parties' intent not to arbitrate disputes arising from the Guaranty, H&H may not rely on the doctrine of equitable estoppel to compel arbitration in this case. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002) (courts cannot "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.").

**RECOMMENDATION**

Based on the foregoing considerations, it is

RESPECTFULLY RECOMMENDED that Defendant's Motion [D.E. 13] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 10th day of May, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Beth Bloom
     Counsel of Record