UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-24000-BLOOM/Otazo-Reyes

ROTHFOS CORPORATION,

    Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,

    Defendant.
_____/

**ORDER OVERRULING OBJECTIONS**

**THIS CAUSE** is before the Court upon the Motion to Compel Arbitration and Dismiss, Or, Alternatively, Stay Litigation, ECF No. [13] ("Motion"), filed on January 9, 2023 by Defendant H&H Coffee Investments, LLC ("H&H"). On February 14, 2023, the Court referred the Motion to Magistrate Judge Alicia M. Otazo-Reyes for a Report and Recommendations ("R&R"). ECF No. [18]. On May 10, 2023, Judge Otazo-Reyes filed her R&R, recommending denial of H&H's Motion. ECF No. [28]. H&H timely filed Objections to the R&R, ECF No. [31], to which Plaintiff Rothfos Corporation ("Rothfos") filed a Response, ECF No. [32].

The Court has carefully considered the R&R, H&H's Objections, Rothfos's Response, the record in this case, the applicable law, and is otherwise fully advised. Moreover, the Court has conducted a *de novo* review of the R&R in light of Plaintiff's Objections. For the reasons set forth below, the Court adopts the R&R in full.

    **I.**    **BACKGROUND**

The Court adopts the facts of this case as set forth in the R&R. ECF No. [28] at 1-3. To summarize the relevant allegations:

Rothfos alleges that, between February 2019 and December 2021, it entered into 49 purchase orders with third-party CLR Roasters, LLC ("CLR") for 147,950 bags of coffee beans ("Purchase Contracts"). ECF No. [9] ¶ 15. Each of those Purchase Contracts requires that "[a]ll controversies relating to, in connection with, or arising out of this contract . . . be settled by arbitration[.]" ECF No. [9-2] at 29. CLR breached those Purchase Contracts by failing to deliver the coffee beans. ECF No. [9] ¶¶ 17-18. Thereafter, Rothfos and CLR reached a "Workout Agreement" under which they would "roll over" to the 2021-2022 crop year approximately 33,550 bags of coffee beans that Rothfos had already paid for. *Id.* ¶¶ 19-20.

On or about December 24, 2021, H&H executed a Corporate Guaranty ("Guaranty") as a condition to Rothfos extending further credit to CLR. *Id.* ¶¶ 26, 28. As part of that Guaranty, H&H granted a mortgage to Rothfos over a warehouse in Miami-Dade County. *Id.* ¶¶ 3, 28. The Guaranty provides, in relevant part, that H&H "absolutely, unconditionally and irrevocably guarantees as primary obligor and not merely as surety, the punctual payment, when due . . . of all present and future obligations, liabilities, covenants and agreements required to be observed, performed, or paid by CLR[.]" ECF No. [9-4] at 2 ¶ 1. The Guaranty also provides that "[H&H] agrees that [Rothfos] need not attempt to collect any Obligations from CLR or any other entity or to realize upon any collateral to enforce the obligations hereunder," and that "[t]he obligations of [H&H] under this Guaranty are independent of the Obligations and [Rothfos] may bring a separate action or actions against CLR and or [H&H] or any other guarantors." *Id.* ¶ 2. Rothfos and H&H also stipulated in the Guaranty that the "[m]andatory venue for any legal proceeding between [Rofthfos] and [H&H] shall be in Miami-Dade County, Florida." *Id.* at 3 ¶ 6.

Rothfos allegedly notified H&H of CLR's default of the Purchase Contracts and Workout Agreement, but H&H has failed to cure. ECF No. [9] ¶¶ 39, 40. Rothfos brings this suit for breach

of the Guaranty and to foreclose on H&H's mortgaged property that was secured thereunder. *Id.* at 10-12.

In its Motion, H&H moves the Court to "compel arbitration of the dispute as it relates to the CLR Purchase Contracts and dismiss or stay the pending litigation between the parties." ECF No. [13] at 11. H&H argues that, "[a]lthough H&H is not a signatory to the Rothfos-CLR Purchase Contracts, it is entitled to invoke arbitration under the principle of equitable estoppel." *Id.* at 6.

Rothfos responds that equitable estoppel does not apply in these circumstances because the Guaranty between Rothfos and H&H is separate and independent from the Purchase Contracts, and it plainly does not require arbitration. ECF No. [14] at 18-21.

## II.     LEGAL STANDARD

### A. Objections to the R&R

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp. v. WestPoint*

*Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

### B. Motion to Compel Arbitration

A defendant seeking to compel arbitration must demonstrate that "(a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quotation marks omitted). As a basic principle, "a party may not be compelled to arbitrate if [it] did not agree to do so." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008). The "issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017). Under Florida law, there are three circumstances in which a non-signatory is permitted to compel arbitration: (1) equitable estoppel; (2) agency or related principles; and (3) third-party beneficiary. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp.*, 608 F. Supp. 2d 1331, 1341 (S.D. Fla. 2009) (citation omitted).

### III.  DISCUSSION

The primary issue raised in the Objections is whether Judge Otazo-Reyes erred in rejecting H&H's equitable estoppel argument. H&H argues that the issue of whether it breached its duties under the Guaranty turns on whether non-party CLR breached its duties under the CLR Purchase Contracts. *See generally* ECF No. [31]. H&H therefore contends that CLR's breach is a preliminary issue which must be sent to arbitration in accordance with the terms of the CLR Purchase Contracts. ECF No. [13] at 6, 9.

Judge Otazo-Reyes agreed with Rothfos that equitable estoppel is inapplicable because the Guaranty is an independent contract that does not incorporate the terms of the CLR Purchase Contracts, and the plain text of the Guaranty indicates that the parties did not agree to arbitrate disputes arising from the Guaranty. ECF No. [28] at 8. H&H argues that Judge Otazo-Reyes erred in four ways.

### A. The Cases Cited by H&H

H&H first argues that Judge Otazo-Reyes erred in distinguishing the cases H&H cited in support of its Motion: *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210 (Fla. 3d DCA 2003), *Cuningham v. Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940 (Fla. 3d DCA 2000), *Poole v. People's Choice Home Loan, Inc.*, No. 06-cv-327, 2007 WL 865526, at *3 (M.D. Fla. Mar. 21, 2007) and *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014). However, in each of those cases, the plaintiff's claims arose out of a single contract containing an arbitration provision. ECF No. [28] at 5. Thus, even though the plaintiffs were not signatories to the contracts containing arbitration clauses, they were bound to arbitrate by the doctrine of equitable estoppel. Judge Otazo-Reyes distinguished those cases from the present case in that the cited cases all involved a *single* contract containing an arbitration clause. *Id*. Here, by contrast, Rothfos's claims arise under a *separate* contract—the Guaranty—which expressly states that H&H's obligations under the Guaranty "are independent of" Rothfos's agreements with CLR. *Id.* (quoting ECF No. [9-4] ¶ 2).

H&H asserts that Judge Otazo-Reyes's reasoning is flawed because H&H is not seeking to arbitrate the Guaranty in full, but rather "the discrete issue of CLR's alleged breach of the CLR Purchase Contracts." ECF No. [31] at 5. Relatedly, H&H argues that "even though the Guaranty states that H&H's obligations under the Guaranty are independent of CLR's obligations and that

5

Rothfos need not attempt to collect from CLR to enforce the Guaranty, CLR's breach is a threshold issue that must be resolved in arbitration before Rothfos can attempt to enforce the Guaranty." *Id.*

The Court agrees with Judge Otazo-Reyes that the four cases cited by H&H are distinguishable in that they each involve a *single* contract containing an arbitration clause. Here, Rothfos is not suing under the CLR Purchase Contracts, which require arbitration, but instead under the Guaranty, which does not. The Guaranty expressly states that: (i) "H&H . . . absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the punctual payment . . . ."; (ii) H&H's obligations under the Guaranty "are independent" of CLR's obligations to Rothfos; (iii) Rothfos "need not attempt to collect any Obligations from CLR . . . to enforce the obligations hereunder"; and (iv) Rothfos "may bring a separate action or actions against CLR and or [H&H] the Guarantor or any other guarantors." ECF No. [9-4] at 2. The plain language of these provisions reveals that the Guaranty is an "absolute" promise to pay in the event of CLR's default. *Jain v. Buchanan Ingersoll & Rooney PC*, 322 So. 3d 1201, 1204–05 (Fla. 3d DCA 2021). "Where the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." *Id.* Thus, Judge Otazo-Reyes correctly distinguished the single-contract cases cited by H&H from the instant case, which involves an additional, separate, independent, and absolute guaranty.

### B.  The Cases Relied Upon by Judge Otazo-Reyes

Second, H&H argues that Judge Otazo-Reyes erred in relying on three cases she found "more analogous to the case at bar." ECF No. [28] at 6 (citing *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342 (11th Cir. 2008); *Lee v. All Fla. Constr. Co.*, 662 So. 2d 365, 366 (Fla. 3d DCA 1995); *Perdido Key Island Resort Dev., L.L.P. v. Regions Bank*, 102 So. 3d 1, 3 (Fla.

1st DCA 2012); *Harvey v. Lifespace Cmtys., Inc.*, 306 So. 3d 1248 (Fla. 5th DCA 2020)). Although H&H concedes that those cases involved two contracts, like the instant case, H&H contends that "the existence of two contracts . . . is not dispositive. . . . The terms of the Guaranty are dependent on the performance of the CLR Purchase Contracts, and this dispute naturally arises from the CLR Purchase Contracts." ECF No. [28] at 7-8.

H&H is correct that the existence of two contracts "is not dispositive," but that is not what Judge Otazo-Reyes concluded. *Id.* Each of the cases cited by Judge Otazo-Reyes stand for the proposition that, when analyzing whether parties are bound to arbitration, the court must look to the provisions of the contract(s) at issue to ascertain whether the parties intended to arbitrate potential disputes between them. That conclusion stems from the basic principle that "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999). In *International Underwriters*, the Eleventh Circuit explicitly rejected the proposition that "any dispute that could not have arisen but for an agreement necessarily 'arises from or relates to' the agreement within the meaning of an arbitration clause." 533 F.3d at 1347. "[A] dispute does not 'arise out of or in connection with' a contract just because the dispute would not have arisen if the contract 'had never existed'" *Id.* (quoting *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1351 (11th Cir.1982). The plain terms of the Guaranty make clear that it is an absolute guaranty, independent from the terms of the contracts between Rothfos and CLR. Judge Otazo-Reyes correctly concluded that Rothfos's claims against H&H arise from the Guaranty, not the CLR Purchase Contracts.

### C. The Venue Clause

Third, H&H argues that Judge Otazo-Reyes erred in concluding that the Guaranty's venue clause constitutes additional evidence that the parties did not intend to agree to arbitration. ECF

7

No. [31] at 8. Whereas the arbitration clause incorporated within the CLR Purchase Contracts stipulates that the location of arbitration hearings "will default to New York," the Guaranty provides that "[m]andatory venue for any legal proceeding between [Rothfos] and [H&H] shall be in Miami-Dade County, Florida." ECF No. [28] at 5-6. H&H argues that that the arbitration provisions incorporated into the CLR Purchase Contracts state that arbitration may be conducted "at any facility," so those provisions do not limit the physical location of the arbitration to New York or foreclose the possibility of arbitrating in a facility in Miami-Dade County. ECF No. [31] at 8. Even accepting H&H's assertion that the CLR Purchase Contracts *permit* arbitration to occur in Miami, the Court agrees with Judge Otazo-Reyes that there is an inconsistency between the presumed location of arbitration in the CLR Purchase Contracts (New York) and the Guaranty's required venue of legal proceedings in Miami. That inconsistency is further evidence that the parties to the Guaranty did not intend to incorporate the CLR Purchase Contracts' arbitration provisions. The Court agrees with Judge Otazo-Reyes that the Guaranty's venue provision and its "failure to include any reference to arbitration" constitute "substantial evidence" that Rothfos and H&H did not intend to arbitrate disputes arising under the Guaranty. ECF No. [28] at 6-7 (quoting *Int'l Underwriters*, 533 F.3d at 1345).

### D.  The Legal Basis for Rothfos's Claims

Fourth and last, H&H argues that the R&R erred in determining that the CLR Purchase Contracts did not form the legal basis for Rothfos's claims. ECF No. [31] at 8 (citing *Bailey v. ERG Enters.*, 705 F.3d 1311, 1322 (11th Cir. 2013)). The single case cited by H&H provides no support for its position. The *Bailey* court agreed with the Tenth Circuit that, "[f]or a plaintiff's claim to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's

claims or has a 'but-for' relationship with them." 705 F.3d at 1322 (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir.2011)). Here, Judge Otazo-Reyes correctly concluded that the Guaranty, not the CLR Purchase Contracts, "form[s] the legal basis" of Rothfos's claims against H&H. *Id*. "H&H could have bargained for the inclusion of an arbitration clause in the Guaranty, but it did not." ECF No. [28] at 6. Accordingly, Judge Otazo-Reyes correctly concluded that H&H's Motion must be denied.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. H&H's Objections, **ECF No. [31]**, are **OVERRULED**.

2. The R&R, **ECF No. [28]**, is **ADOPTED IN FULL**.

3. H&H's Motion, **ECF No. [13]**, is **DENIED**.

4. **No later than June 26, 2023**, H&H shall file it Answer to the Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 15, 2023.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record