**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-24000-BECERRA/TORRES**

ROTHFOS CORPORATION,
a New York Corporation,

        Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,
a Florida Limited Liability Company,
H&H COFFEE GROUP EXPORT CORP.,
a Florida Corporation, CACHITA
LATINA RADIO CORP., a Florida
Corporation, CACHITA UNIVERSAL
STUDIOS INC., a Florida Corporation,
ENTV USA CR PUBLISHING CORP., a
Florida Corporation, and ENTV USA
INC., a Florida Corporation,

        Defendants.

**JOINT PRETRIAL STIPULATION**

# TABLE OF CONTENTS

**Page**

I.      Parties' Statement of Case ................................................................................. 1

    A.     Rothfos' Statement of Case ................................................................... 1

    B.     Defendants' Statement of Case .............................................................. 1

II.     Basis for Federal Jurisdiction ............................................................................. 2

III.    Pleadings ............................................................................................................ 3

IV.     Undisposed of Motions and Other Matters Requiring Action by the Court ...................... 3

V.      Statement of Uncontested Facts ......................................................................... 3

VI.     Statement of Facts to be Litigated at Trial ........................................................ 12

VII.    Statement of Issues of Law on Which there is Agreement ................................. 12

    A.     Rothfos' Claims ................................................................................... 12

    B.     H&H's Counterclaims ......................................................................... 14

    C.     Dragnet Clauses .................................................................................. 15

VIII.   Statement of Issues of Law Which Remain for Determination .......................... 15

IX.     Trial Exhibit List .............................................................................................. 16

    A.     Rothfos' Exhibits ................................................................................ 16

    B.     Defendants' Exhibits .......................................................................... 16

X.      Trial Witness List ............................................................................................. 16

    A.     Rothfos' Witnesses ............................................................................. 16

    B.     Defendants' Witnesses ....................................................................... 17

XI.     Estimated Trial Time ........................................................................................ 18

XII.    Estimate of Prevailing Party Attorney's Fees ................................................... 19

    A.     Rothfos' Estimate ............................................................................... 19

    B.     Defendants' Estimate .......................................................................... 19

Pursuant to the Court's Amended Order Setting Trial, Calendar Call, Pretrial Deadlines, and Pretrial Procedures [ECF No. 180], Plaintiff Rothfos Corporation and Defendants H&H Coffee Investments, LLC, H&H Coffee Group Export Corp., Cachita Latina Radio Corp., Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., and ENTV USA Inc. (collectively, the "Parties") hereby submit the following Joint Pretrial Stipulation.

## I.    Parties' Statement of Case

### A.    Rothfos' Statement of Case

1.    Defendant H&H Coffee Investments, LLC ("H&H") agreed to absolutely, unconditionally, and irrevocably guaranty CLR Roasters, LLC's ("CLR") obligation to deliver Nicaraguan green coffee beans to Plaintiff Rothfos Corporation ("Rothfos") during the 2021-2022 coffee season. CLR defaulted on its obligation to Rothfos, thereby triggering H&H's guaranty. Even CLR concedes its default: On June 19, 2022, CLR admitted in a formal memorandum sent to Rothfos that CLR had not yet delivered coffee for which Rothfos had advanced $18,088,975 to CLR. No coffee was delivered to Rothfos after CLR's blunt admission. H&H, therefore, is liable to Rothfos pursuant to the guaranty, and Rothfos is entitled to foreclose on the warehouse and other collateral that was given by H&H as security for the guaranty.

### B.    Defendants' Statement of Case

2.    The Guaranty and Mortgage at issue in this case are unenforceable under Florida law. Moreover, and in the alternative, H&H only agreed to sign the guaranty and mortgage on the condition that they would never be recorded and that the amount guaranteed would be capped at $1 million. This is corroborated by Rothfos's own actions in contemporaneously securing a documentary stamp tax that provided for a maximum security of $1 million rather than the nearly $20 million they allege they are entitled to foreclose against. Tellingly, Rothfos did not increase the secured amount by filing an additional documentary stamp tax *until October 21, 2023, nearly*

1

*a year into the instant litigation.* The Guaranty and Mortgage should thus be declared void, or, in the alternative, they should be limited to $1 million. If no such limitation is upheld, then the amount subject to the Guaranty must be reduced to exclude (i) the advances from prior seasons, (ii) debts from the 2021-2022 season that were not specifically identified in the Guaranty and Mortgage, and (iii) all future advances occurring after the execution of the Guaranty and Mortgage.

**II.**     **Basis for Federal Jurisdiction**

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.      Rothfos is a New York corporation, with its principal office in Hoboken, New Jersey. *See* Pl's Resp. to Order to Show Cause Regarding Diversity Jurisdiction [ECF No. 43], at p.2.

5.      H&H is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. *See* Def's Ans. to Sec. Am. Compl. [ECF No. 105], at ¶ 6; Pl's Resp. to Order to Show Cause Regarding Diversity Jurisdiction [ECF No. 43], at pp.2-3.

6.      Alain Piedra Hernandez, the sole member of H&H, is a resident of, citizen of, and domiciled in the State of Florida. *See* Def's Ans. to Sec. Am. Compl. [ECF No. 105], at ¶ 7; Pl's Resp. to Order to Show Cause Regarding Diversity Jurisdiction [ECF No. 43], at pp.3-7.

7.      Defendants H&H Coffee Group Export Corp., Cachita Latina Radio Corp., Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., and ENTV USA Inc. (collectively, the "Defendant Tenants") are Florida corporations with their principal places of business in Miami-Dade County, Florida. *See* Def's Ans. to Sec. Am. Compl. [ECF No. 105], at ¶¶ 9-13.

8.      The amount in controversy—at least $18,088,975—exceeds the jurisdictional threshold. *See* Pl's Sec. Am. Compl. [ECF No. 101], at ¶¶ 15, 50; Def's Ans. to Sec. Am. Compl.

[ECF No. 105], at ¶ 15.

### III. Pleadings

9.      The operative pleadings are: (a) the Second Amended Complaint [ECF No. 101]; (b) Defendants' Answer to Second Amended Complaint, Affirmative Defenses, and Counterclaims [ECF No. 105]; and (c) Rothfos Corporation's Answer and Affirmative Defenses to H&H Coffee Investments, LLC's Counterclaims [ECF No. 106].

### IV. Undisposed of Motions and Other Matters Requiring Action by the Court

10.     The undisposed of motions requiring action by the Court are: (a) Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 176], and (b) Defendant/Counter-Plaintiff H&H's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 178].

### V. Statement of Uncontested Facts

11.     The parties stipulate that the facts set forth in this section are admitted and require no proof at trial.

#### Federal Jurisdiction

12.     Complete diversity exists between the Parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

#### The Parties

13.     Rothfos imports green coffee and sells it to roasters in the U.S. and Canada, who, in turn, sell coffee "on the shelves or in [] cafes."

14.     Rothfos began doing business with CLR, a coffee exporter, around 2010.

15.     H&H is a Florida limited liability company that owns a warehouse located at 7355 N.W. 41st Street, Miami, Florida 33166 (the "Mortgaged Real Property") and appurtenant personal and intangible property that is the subject of this action.

16.     The Defendant Tenants are each separate Florida corporations that operate businesses out of the Mortgaged Real Property pursuant to a purported lease dated July 21, 2021 with H&H as landlord.

17.     The purported lease between H&H and the Defendant Tenants is for a term of 26 years; limits rent to no more than the cost of annual debt service plus expenses; was not publicly recorded; and was signed by Alain Piedra Hernandez on behalf of all of the Defendant Tenants as "President" and H&H as "Manager."

18.     Alain Piedra Hernandez is H&H's sole member, and is the shareholder and/or President of each of the Defendant Tenants.

### *CLR Roasters, LLC and the Nicaraguan Coffee Export Companies*

19.     Non-party CLR "was a coffee roasting operation and distribution company."

20.     CLR was Rothfos' sole source of Nicaraguan coffee.

21.     CLR's business involved "shipping [green coffee] to customers like Rothfos, who then [] turn[] around and sell[] that coffee to . . . roasters, so they can roast it and sell it off to their customers."

22.     CLR ceased its operations on or about May 21, 2023 after it defaulted on a loan with a secured lender, which resulted in a distressed sale of substantially all of CLR's assets.

23.     Non-party Hernandez Hernandez Export & CIA Ltd., a Nicaraguan company ("Hernandez Export"), served as CLR's agent, and was charged by CLR with the duty of procuring coffee for delivery to Rothfos.

24.     Alain Piedra Hernandez is a stockholder of Hernandez Export, and the principal owner of Defendant H&H Coffee Group Export Corp. ("H&H Export").

25.     Rothfos never directly conducted business with Hernandez Export or H&H Export.

4

*The Purchase Orders*

26.     Between February 2019 and December 2021, Rothfos and CLR entered into the 49 purchase orders that are the subject of this lawsuit and are attached as Composite Exhibit A to the Second Amended Complaint [ECF No. 101-1] (the "Purchase Orders"), by which CLR agreed to deliver to Rothfos 147,950 bags of green coffee.

27.     The Purchase Orders Numbers are as follows: 38905, 38906, 38907, 39783, 40181, 40866, 40879, 41455, 41456, 42888, 42933, 42934, 42935, 42935A, 42936, 42937, 42950, 43015, 43016, 43017, 43018, 43019, 43020, 43021, 43022, 43023, 43024, 43025, 43026, 43027, 43028, 43029, 43030, 43097, 43098, 43165, 43166, 43167, 43168, 43169, 43170, 43171, 43172, 43173, 43174, 43302, 43303, 43304, and 43305.

28.     CLR accepted the 49 Purchase Orders from Rothfos, including unsigned Purchase Orders.

29.     H&H was not a party to the Purchase Orders.

30.     The Purchase Orders were governed by the Contract Terms and Conditions of the Green Coffee Association.

31.     Of the 49 Purchase Orders, (a) Purchase Order No. 38905 was executed in February 2019 with delivery to be made in October 2019; (b) Purchase Order No. 38906 was executed in February 2019 with delivery to be made in November 2019; (c) Purchase Order No. 38907 was executed in February 2019 with delivery to be made in December 2019; (d) Purchase Order No. 39783 was executed in November 2019 with delivery to be made in January 2020; (e) Purchase Order No. 40181 was executed in January 2020 with delivery to be made in July 2020; (f) Purchase Order No. 40866 was executed in July 2020 with delivery to be made in September 2020; and (g) Purchase Order No. 40879 was executed in July 2020 with delivery to be made in October 2020. When those seven Purchase Orders were initially executed, they were not considered to be part of

CLR's obligations for the 2021-2022 season.

32.    The other 42 Purchase Orders called for delivery during the 2021-2022 coffee season.

33.    The coffee season is divided into two parts: the part in which it is gathered and collected, and the part in which it is exported. The 2021-2022 coffee season began in September 2021 and went through September 2022.

34.    Rothfos advanced funds to CLR under the Purchase Orders because CLR "need[ed] the money up front to buy the coffee and then ship it to [Rothfos]."

***Wire Transfers from Rothfos to CLR***

35.    From September 10, 2021 to March 17, 2022, Rothfos made advances to CLR in the total amount of $21,700,000.00 for the purchase of green coffee beans.

***The Workout Agreement***

36.    On or about January 7, 2022, Rothfos and CLR signed the document titled "2020/2021 and 2021/2022 Coffee Program Assessment and Acknowledgement," which is referred to by the Parties as the "Workout Agreement."

37.    In the Workout Agreement, Rothfos and CLR agreed to "roll over" unfulfilled coffee orders from prior seasons into the 2021-2022 coffee season, because CLR had not timely delivered coffee to Rothfos under the associated contracts.

38.    The Workout Agreement stated that "the remaining roll over balance" of those contracts was "approximately $6,113,975."

39.    The "roll[ed] over" obligations under the Workout Agreement included, among other obligations, portions of the coffee that was due under Purchase Orders 38905, 38906, 38907, 40181, 40866, and 40879 that CLR had failed to deliver to Rothfos in 2019 or 2020.

40.    The Workout Agreement further stated that "[a]s of today, for crop year 2021-22,

6

Rothfos Corporation has transferred $19,725,000 vs. the equivalent of 233 containers of SHG coffee …."

### CLR's Deliveries of Coffee

41.     Although CLR did deliver some coffee to Rothfos, CLR did not deliver $21,700,000.00 worth of coffee to Rothfos.

42.     CLR shipped and delivered to Rothfos 110 containers, or roughly 30,000 bags of coffee, during the 2021-2022 season.

43.     Rothfos deducted the value of any delivered coffee from the $21,700,000.00 advance in maintaining records of CLR's account balance.

44.     When Rothfos received coffee from CLR, Rothfos would "draw down the advance accounts." "[E]very CLR invoice gets applied to the vendor account along with the cash. So the money goes out, [CLR] ship[s] coffee, [Rothfos] book[s] it to the account."

45.     CLR transferred some of Rothfos' advances received under the Purchase Orders to companies controlled by Mr. Hernandez to source and deliver coffee to Rothfos.

46.     In the ordinary course of its business, Rothfos systematically tracks the status of deliveries (and non-deliveries) of coffee made pursuant to its purchases and advances, including with respect to the Purchase Orders.

47.     In the ordinary course of its business, Rothfos also maintains copies of records and documents showing that coffee has been tendered or delivered to Rothfos, including, among others: account statements, bills of lading, booking confirmations, certificates of insurance, sampling orders, warehouse receipts, receiving reports, invoices, customs documents, and delivery orders.

48.     However, Rothfos does not track the payment of a specific wire transfer against the Purchase Order(s) or other contract(s) for the sale of green coffee that the coffee would be or

should be delivered under.

49.     Instead, Rothfos sends wire transfers as payment "toward the contracts in the aggregate."

### CLR's Deal Point Memo

50.     On June 19, 2022, CLR's President, David Briskie, sent Rothfos a "Deal Point Memo," in which he stated that Rothfos had paid CLR: (i) "approx. $6.1 million" for "2019/2020 crop season" contracts that were rolled over to the 2021/2022 crop/season pursuant to the Workout Agreement, and (ii) "approx. $11,975,000" in additional advances for coffee for the 2021/2022 crop season that remained unfulfilled.

51.     The Deal Point Memo further stated that "approx. $18 million" had been paid by Rothfos to CLR for coffee that CLR had not delivered as of the date thereof.

52.     According to the Deal Point Memo, the total amount that Rothfos advanced to CLR that was not delivered was at least $18,088,975 (i.e., $6,113,975 in unfulfilled, rolled over purchase orders + $11,975,000 in unfulfilled advances = $18,088,975).

### The Guaranty and the Mortgage

53.     In the fall of 2021, Rothfos grew concerned about the amount of money it had paid to CLR against unfulfilled green coffee contracts and informed CLR that it was looking for additional security.

54.     On November 9, 2021, counsel for CLR and Rothfos exchanged a draft version of what would become the Guaranty, but without the Guaranty's paragraph (g) provision.

55.     Subsection (g) was later added to paragraph 6 through the negotiation of the parties and reads: "This guaranty shall apply to the purchases and advances by [Rothfos] for the 2021-22 season unless extended by agreement of the parties."

56.     Rothfos never directly communicated with H&H about the Guaranty or the

8

Mortgage.

57.     As of December 23, 2021, Rothfos was unwilling to advance any additional money to CLR without collateral being provided.

58.     H&H signed the Corporate Guaranty (hereinafter, the "Guaranty") and the "Mortgage" on December 24, 2021.

### *The Guaranty*

59.     Paragraph 1 of the Guaranty states, in part, that H&H will guarantee "all present and future obligations, liabilities, covenants and agreements to be observed, performed, or paid by CLR."

60.     Paragraph 6(g) of the Guaranty limits the Guaranty to "purchases and advances" by Rothfos for the "2021-22 season unless extended by agreement of the parties."

61.     The Guaranty as written does not contain any limit as to the total dollar value of the coffee subject to the Guaranty.

62.     The Guaranty as written does not contain any limit as to the total number of bags of coffee subject to the Guaranty.

63.     H&H's understanding of the terms of the Guaranty came from discussions with David Briskie and Ernesto Aguila and what the Guaranty itself states.

64.     Alain Piedra Hernandez alleges that he was informed by David Briskie and Ernesto Aguila that H&H would only be securing a principal amount of $1 million under the Guaranty.[1]

---

[1] Plaintiff does not contest that Alain Piedra Hernandez alleges that he was informed by non-parties David Briskie and Ernesto Aguila that H&H would only be securing a principal amount of $1 million under the Guaranty, but states that there is a factual dispute regarding what David Briskie and Ernesto Aguila told H&H regarding the amount of the collateral that would be subject to the Guaranty.

### *The Mortgage*

65.     The Mortgage provides Rothfos with a lien on the Mortgaged Real Property (including, *inter alia*, all structures, buildings, and improvements thereon) and all personal property, intangibles and other collateral affixed to, or associated with, the Mortgaged Real Property, including: fixtures, furniture, furnishings, equipment, machinery, inventory, materials, permits, licenses, trade names, trademarks, and personal property located in or on the Mortgaged Real Property, or in or on its buildings, structures, or improvements, as well as all leases and leasehold interests, agreements of sale, other agreements, contract rights, accounts, receivables, and general intangibles connected to the Mortgaged Real Property, as more particularly described in the Mortgage.

66.     Paragraph 9 of the Mortgage, titled "Future Advances," secures the repayment of past, present, and future advances, and states the Mortgage "shall secure not only the existing indebtedness evidenced by the Guaranty, but also such future advances as may be made by Mortgagee to CLR . . . ."

67.     The Mortgage does not specify a maximum principal amount and purports to waive Rothfos's obligation to state a maximum principal amount.

68.     The Mortgage prohibits H&H from recording a separate instrument stating an agreed-upon maximum principal amount.

69.     Pursuant to Paragraph 8 of the Mortgage, H&H assigned to Rothfos all rights, title, and interests of H&H to all rents, royalties, issues, profits, revenue, income, proceeds, licenses, and other benefits derived from the Mortgaged Real Property, as more particularly described in the Mortgage.

70.     H&H was not "misled" by David Briskie or Ernesto Aguila in connection with the Guaranty or the Mortgage.

10

71.     H&H was not "cheated" or "[taken] advantage of" in connection with the Guaranty or the Mortgage; "these are the consequences of business."

72.     The Mortgage was publicly recorded on June 1, 2022.

73.     On May 9, 2022, Rothfos paid $3,500 in documentary stamp taxes on the Mortgage.

74.     The $3,500 documentary stamp tax represents that the Mortgage initially secured a principal amount of up to $1 million.

75.     On October 19, 2023, Rothfos paid an additional $63,190.40 in documentary stamp taxes in connection with the Mortgage, thereby representing an additional $18,054,376 in principal secured by the Mortgage (or a total of $19,054,376 in principal).

76.     On October 24, 2022, Plaintiff filed a UCC-1 Financing Statement with the Florida Secured Transaction Registry, under File Number 202203407008 (the "Financing Statement"). On October 25, 2022, the Financing Statement was recorded in Official Records Book 33436, at Page 2665, of the Public Records of Miami-Dade County, Florida.

### *Rothfos' Post-Guaranty Wire Transfers to CLR, and Notices of Default*

77.     Following execution of the Guaranty and the Mortgage, Rothfos made advances to CLR in the total amount of $5,515,000 as follows: (a) $2,500,000 on December 24, 2021; (b) $1,040,000 on December 30, 2021; (c) $500,000 on January 14, 2022; (d) $500,000 on February 7, 2022; (e) $175,000 on March 3, 2022; and (f) $800,000 on March 17, 2022.

78.     CLR claims that neither CLR, nor H&H, nor any of their agents, tendered or delivered any additional coffee to Rothfos after June 19, 2022. All of the coffee that Rothfos received from CLR, H&H, and their agents pre-dates June 19, 2022.

79.     On September 29, 2022, Rothfos delivered to CLR and H&H a letter with the subject line: FINAL NOTICE OF DEFAULT AND DEMAND FOR PAYMENT OF AMOUNTS DUE AND OWING (the "Final Default Letter").

80.     Following their receipt of the Final Default Letter and through the present date, no funds were paid to Rothfos, and no coffee was delivered or tendered to Rothofs, by CLR, H&H, or any of their agents.

81.     On November 30, 2022, Rothfos sent a letter (the "Demand for Rents Letter") to H&H, pursuant to Section 697.07 of the Florida Statutes, demanding turnover and the immediate payment to Rothfos of all rents thereafter collected from the Mortgaged Real Property until such time as the underlying obligations were satisfied in full or a foreclosure action was completed.

82.     Following its receipt of the Demand for Rents Letter and through the present date, H&H did not turn over any rents to Rothfos.

## VI.     Statement of Facts to be Litigated at Trial

83.     As set forth in Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 176], and (b) Defendant/Counter-Plaintiff H&H's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 178], the Parties do not believe that there are any undisputed statements of material facts.

84.     Notwithstanding the foregoing paragraph, should the Court deny the pending Motions for Summary Judgment, facts that may be litigated in trial include the amount of funds advanced by Rothfos to CLR for coffee from the 2021-2022 season, and the amount of coffee that Rothfos received for those advances, among others.

## VII.     Statement of Issues of Law on Which there is Agreement

### A.     Rothfos' Claims

*Florida Law Applies*

85.     The Guaranty and the Mortgage are governed by Florida law. *See* Mortgage, at ¶ 43 ("This Mortgage shall be governed by and construed under and in accordance with the laws of the State of Florida."); *Talisman Cap. Alt. Invs. Fund, Ltd. v. Mouttet*, No. 10-24577-CIV, 2012 WL

13012424, at *3 (S.D. Fla. Feb. 16, 2012) ("Under Florida law, the parties' choice of law embodied in a contract is presumptively valid and will be given effect unless that choice contravenes a strong public policy.") (citation omitted); *Steadfast Ins. Co. v. Celebration Source, Inc.*, 240 F. Supp. 3d 1295, 1300 (S.D. Fla. 2017) ("The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."), *aff'd*, 730 F. App'x 865 (11th Cir. 2018).

### *Breach of Guaranty (Count I)*

86.     "A breach of guaranty is a straightforward breach of contract claim." *Talisman Cap. Alt. Invs. Fund, Ltd.*, 2012 WL 13012424, at *4 (citation omitted). "To succeed on such a claim, a plaintiff must establish: (1) the existence of the contract; (2) breach of the contract; and (3) damages resulting from such breach." *Id.* (citing *Rollins. Inc., v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)).

87.     Under Florida law, the "basic requirements" of a contract are an "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

88.     "The law in Florida provides that one who undertakes an absolute guarantee of payment by another becomes liable immediately upon default." *Jain v. Buchanan Ingersoll & Rooney PC*, 322 So. 3d 1201, 1204–05 (Fla. 3d DCA 2021).

### *Foreclosure (Counts II and III)*

89.     To establish entitlement to foreclosure, plaintiffs must "prove their agreement, a default by the defendants, that plaintiffs properly accelerated the debt to maturity, and the amount due." *Ernest v. Carter*, 368 So. 2d 428, 429 (Fla. 2d DCA 1979).

90.     "It is a fundamental principle of mortgage law that a valid judicial foreclosure of a senior mortgage terminates not only the [property] owner's title and equitable redemption rights,

but also all other junior interests whose holders were made parties defendant." Restatement (Third) of Property (Mortgages) § 7.1 (1997); *see also Redding v. Stockton, Whatley, Davin & Co.*, 488 So. 2d 548, 549 (Fla. 5th DCA 1986), *cause dismissed*, 492 So. 2d 1334 (Fla. 1986) (stating that foreclosure of senior mortgage extinguishes subordinate lease); *PNC Bank, Nat. Ass'n v. J.P. McCormack Const., Inc.*, 6:12-CV-1042-ORL-37, 2014 WL 235479, at \*2 (M.D. Fla. Jan. 22, 2014) (entering foreclosure judgment in favor of plaintiff with "superior rights in the property" against tenants in possession).

### *Enforcement of Assignment of Rents Provision (Count IV)*

91.     Where an assignment of rent is made, "the mortgagee shall hold a lien on the rents, and the lien created by the assignment shall be perfected and effective against third parties upon recordation of the mortgage or separate instrument in the public records of the county in which the real property is located, according to law." Fla. Stat. § 697.07(2). To obtain an assignment of rents, "the plaintiff need only make a bare showing of a pending foreclosure action with an assignment of rents provision." *Branch Banking & Tr. Co. v. Jomar Hudson, LLC*, No. 8:13-CV-1952-T-17EAJ, 2014 WL 957134, at \*1 (M.D. Fla. Mar. 10, 2014) (citing *Wane v. U.S. Bank, Nat. Ass'n*, 128 So. 3d 932, 934 (Fla. 2d DCA 2013)).

### B.     H&H's Counterclaims

92.     The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A party is entitled to a declaration of rights when there is an "actual controversy" between the parties. *See id*. The actual controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

### C.      Dragnet Clauses

93.      "Dragnet clauses are those which purport to secure all debts, past, present and future, between the parties to a security agreement." *Uransky v. First Fed. Sav. & Loan Ass'n of Fort Myers*, 684 F.2d 750, 756 n.5 (11th Cir. 1982). A dragnet clause is enforceable as to "debts incurred prior to the security agreement" where "th[o]se debts were specifically identified in the security agreement itself." *United Nat'l Bank v. Tellam*, 644 So. 2d 97, 98 (Fla. 3d DCA 1994).

### VIII.   <u>Statement of Issues of Law Which Remain for Determination</u>

94.      As set forth in Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 176], and (b) Defendant/Counter-Plaintiff H&H's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 178], the Parties do not believe that there are disputed issues of law which remain for the Court's determination.

95.      Notwithstanding the foregoing paragraph, should the Court deny the pending Motions for Summary Judgment, disputed issues of law for the Court's determination may include: (a) whether the Guaranty is unenforceable or ambiguous; (b) whether the Guaranty and Rothfos' mortgage lien must be capped at $1 million; (c) whether the Mortgage's express waiver of any rights under Section 697.04 of the Florida Statutes is enforceable; (d) whether the "Future Advance Clause" in the Mortgage renders the entire Mortgage void, or, if the clause is found to be unenforceable and/or in violation of Section 697.04 of the Florida Statutes, whether it is severable from the remainder of the Mortgage; (e) whether the doctrine of unclean hands bars any of the Parties from obtaining relief; (f) whether Rothfos impermissibly seeks double recovery by pursuing both foreclosure and a money judgment; and (g) whether Defendants are entitled to attorney's fees should they prevail in this lawsuit.

IX.    <u>**Trial Exhibit List**</u>

      A.    **Rothfos' Exhibits**

96.    A numbered list of Plaintiff's trial exhibits, other than impeachment exhibits, with

Defendants' objection (if any) is attached hereto as **Exhibit A**.

      B.    **Defendants' Exhibits**

97.    A numbered list of Defendants' trial exhibits, other than impeachment exhibits,

with Plaintiff's objection (if any) is attached hereto as **Exhibit B**.

X.    <u>**Trial Witness List**</u>

      A.    **Rothfos' Witnesses**

98.    The following is the list of witnesses that Rothfos expects to present at trial[2]:

     a)    Rothfos Corporation
        111 River Street, Suite 1220
        Hoboken, NJ 07030

     b)    Olaf Syrdahl
        111 River Street, Suite 1220
        Hoboken, NJ 07030

     c)    Tom Minogue
        111 River Street, Suite 1220
        Hoboken, NJ 07030

     d)    H&H Coffee Investments, LLC
        7355 N.W. 41st Street
        Miami, FL 33166

     e)    Alain Piedra Hernandez
        7790 N.W. 200th Street
        Hialeah, FL 33015

     f)    CLR Roasters, LLC
        2400 Boswell Road
        Chula Vista, CA 91914

---

[2] Rothfos reserves the right to call at trial all witnesses listed on Defendants' Trial Witness List.

g)     Ernesto Aguila
c/o Beverly Virues, Esq.
Garcia-Menocal & Perez
350 Sevilla Avenue, Suite 200
14 Coral Gables, Florida 33134

99.     The following is the list of witnesses that Rothfos may call at trial if the need arises:

a)     H&H Coffee Group Export Corp.
790 W. 23rd Street
Hialeah, FL 33010

b)     Cachita Latina Radio Corp.
7355 N.W. 41st Street
Miami, FL 33166

c)     Cachita Universal Studios Inc.
7355 N.W. 41st Street
Miami, FL 33166

d)     ENTV USA CR Publishing Corp.
7355 N.W. 41st Street
Miami, FL 33166

e)     ENTV USA Inc.
7355 N.W. 41st Street
Miami, FL 33166

f)     David Briskie
2400 Boswell Road
Chula Vista, CA 91914

g)     Records Custodian
Bank of America
100 North Tryon Street
Charlotte, NC 28255

**B.     Defendants' Witnesses**

100.     The following is the list of witnesses that Defendants expect to present at trial[3]:

a)     Rothfos Corporation
111 River Street, Suite 1220
Hoboken, NJ 07030

---

[3] Defendants reserve the right to call at trial all witnesses listed on Rothfos's Trial Witness List.

   b)  Tom Minogue
       111 River Street, Suite 1220
       Hoboken, NJ 07030

   c)  H&H Coffee Investments, LLC
       7355 N.W. 41st Street
       Miami, FL 33166

   d)  CLR Roasters, LLC
       2400 Boswell Road
       Chula Vista, CA 91914

101. The following is the list of witnesses that Rothfos may call at trial if the need arises:

   a)  Alain Piedra Hernandez
       7790 N.W. 200th Street
       Hialeah, FL 33015

   b)  Julio Sera
       c/o EPGD Business Law
       777 SW 37th Ave., #510
       Miami, FL 33135

   c)  Ernesto Aguila
       c/o Beverly Virues, Esq.
       Garcia-Menocal & Perez
       350 Sevilla Avenue, Suite 200
       Coral Gables, Florida 33134

   d)  David Briskie
       2400 Boswell Road
       Chula Vista, CA 91914

   e)  Daniel Dwyer
       334 Willow Top Ln.
       Lake Lure, NC 28746

   f)  Olaf Syrdahl
       111 River Street, Suite 1220
       Hoboken, NJ 07030

## XI. **Estimated Trial Time**

102. The parties estimate three to five days for a bench trial.

18

**XII.**   **Estimate of Prevailing Party Attorney's Fees**

       **A.**      **Rothfos' Estimate**

103.    Rothfos estimates that the maximum amount of prevailing party attorney's fees it may recover is $1,264,832, plus additional reasonable attorney's fees to be incurred in connection with preparing for and attending the trial.

       **B.**      **Defendants' Estimate**

104.    Defendants estimate that the maximum amount of prevailing party attorney's fees it may recover is $774,015, plus additional reasonable attorney's fees to be incurred in connection with preparing for and attending the trial.

Date: November 19, 2024                 Respectfully submitted,

By: /s/ *Jason P. Hernandez*
 JASON P. HERNANDEZ
 Florida Bar No. 18598
 jhernandez@stearnsweaver.com
 JOSE G. SEPULVEDA
 Florida Bar No. 154490
 jsepulveda@stearnsweaver.com
 MATTHEW M. GRAHAM
 Florida Bar No. 86764
 mgraham@stearnsweaver.com
 STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
 Museum Tower, Suite 2200
 150 West Flagler Street
 Miami, Florida 33130
 Telephone: (305) 789-3200
 Facsimile: (305) 789-3395

 *Counsel for Plaintiff*

By: /s/ *Alberto M. Manrara*
 OSCAR A. GOMEZ
 Florida Bar No.: 58680
 oscar@epgdlaw.com
 ALBERTO M. MANRARA
 Florida Bar No.: 103088
 alberto@epgdlaw.com
 EPGD ATTORNEYS AT LAW, P.A.
 777 SW 37 Ave., Ste. 510
 Miami, FL 33135
 T: (786) 837-6787 / F: (305) 718-0687

 *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2024, I electronically filed the foregoing with

the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all

parties via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Jason P. Hernandez*
JASON P. HERNANDEZ

20