**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-24000-BECERRA/TORRES**

ROTHFOS CORPORATION,
a New York Corporation,

     Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,
a Florida Limited Liability Company,
H&H COFFEE GROUP EXPORT CORP.,
a Florida Corporation, CACHITA
LATINA RADIO CORP., a Florida
Corporation, CACHITA UNIVERSAL
STUDIOS INC., a Florida Corporation,
ENTV USA CR PUBLISHING CORP., a
Florida Corporation, and ENTV USA
INC., a Florida Corporation,

     Defendants.

_____

H&H COFFEE GROUP EXPORT CORP.,
a Florida Corporation, and H&H COFFEE
INVESTMENTS, LLC, a Florida Limited
Liability Company,

     Defendants/Third-Party Plaintiffs,

v.

CLR ROASTERS, LLC,
a Florida Limited Liability Company,

     Third-Party Defendant.

**DEFENDANT/COUNTER-PLAINTIFF H&H'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

Defendant/Counter-Plaintiff, H&H Coffee Investments, LLC ("**H&H**"), by and through undersigned counsel, and pursuant to Rule 16.1(k) of the Local Rules of the Southern District of Florida and this Court's September 24, 2024 Amended Order Setting Trial, Calendar Call, Pretrial Deadlines, and Pretrial Procedures [ECF No. 180], hereby files its Proposed Findings of Fact and Conclusions of Law, and states:

## I.   <u>FINDINGS OF FACT</u>

1.     Plaintiff, Rothfos Corporation ("**Rothfos**"), is the largest green coffee importer in North America and imports 10 percent of North America's coffee. ECF No. [101] at ¶ 1.

2.     Around 2010, Rothfos began doing business with CLR Roasters LLC ("**CLR**"), a coffee exporter. ECF No. [75–1] at 12:10–15.

3.     CLR "was a coffee roasting operation and distribution company." ECF No. [80-2] at 11:4–6.

4.     CLR's international business was in green coffee, which involved shipping coffee to customers, like Rothfos, who would then sell coffee to roasters. ECF No. [80-3] at 33:12–23.

5.     Between February 2019 and December 2021, Rothfos and CLR entered into 49 purchase orders for 147,950 bags of coffee to be delivered to Rothfos, with delivery to be made between October 2019 and February 2022 (the "**Purchase Orders**"). ECF No. [101] at ¶ 22; ECF No. [101-1] at 2–50.

6.     During that period, CLR used H&H Coffee Group Export Corp. ("**H&H Export**") to source most of the coffee it was selling to Rothfos. ECF No. [41] at ¶ 11.

7.     H&H was not a party to the Purchase Orders. ECF No. [101-1] at 2–50; ECF No. [75-2] at 41:15–19.

8.      H&H Export and Rothfos never directly conducted business with one another. ECF No. [75-1] at 14:15–17.

9.      In the fall of 2021, Rothfos grew concerned about the amount of money it had paid to CLR against green coffee contracts and informed CLR that it was looking for additional security. ECF No. [75-2] 35:12–36:1; ECF No. [75-1] at p. 99:20–25.

10.     After ongoing conversations, in the fall of 2021, Rothfos requested a guaranty ("**Corporate Guaranty**") backed up by a mortgage ("**Mortgage**") to continue providing funds. ECF No. [75-2] at 35:12–37:15; 39:1–5.

11.     CLR sought help from Alain Piedra-Hernandez ("**Mr. Hernandez**") in obtaining a Corporate Guaranty and Mortgage. ECF No. [75-2] at 36:1–37:15.

12.     Mr. Hernandez is the principal owner of H&H and H&H Export. ECF No. [75-3] at 11:14–12:1; 14:18–19.

13.     H&H and H&H Export are two separate entities. ECF No. [75-3] at p.14:8–19; ECF No. [75-2] at 39:21–25.

14.     H&H owns a single asset: a warehouse studio property located at 7355 N.W. 41st Street, Miami, Florida, 33166 (the "**Property**"). ECF No. [75-3] at 12:11– 13:8.

15.     Counsel for Rothfos created multiple drafts of the Corporate Guaranty and Mortgage in the fall of 2021. ECF No. [75-1] at 103:1–9; ECF No. [75-2] at 42:7–9; ECF No. [75-3] at 92:12–15.

16.     On November 9, 2021, counsel for CLR and Rothfos exchanged a draft version of the Corporate Guaranty without the Corporate Guaranty's paragraph (g) provision. ECF No. [75-1] at 136:2–8, 138:3–8.

17.     Subsection (g) was later added to paragraph 6 through the negotiation of the parties and reads: "This guaranty shall apply to the purchases and advances by [Rothfos] for the 2021-22 season unless extended by agreement of the parties." ECF No. [101-4] at ¶ 6(g).

18.     Paragraph 1 of the Corporate Guaranty states that H&H will guarantee "all present and future obligations, liabilities, covenants and agreements to be observed, performed, or paid by CLR." ECF No. [101-4] at ¶ 1.

19.     H&H signed the Corporate Guaranty on December 24, 2021. ECF No. [101] at ¶ 32.

20.     CLR represented to H&H that H&H would be guaranteeing $1 million. ECF No. [75-3] at 92:24–93:23; 98:5–12.

21.     On December 24, 2021, H&H also executed a Mortgage in favor of Rothfos, securing the Property as collateral for the Corporate Guaranty. ECF No. [101-5].

22.     Despite the Corporate Guaranty and Mortgage being executed on December 24, 2021, 45 out of the 49 purchase orders between Rothfos and CLR were entered into prior to their execution; specifically, these purchase orders were made between February 22, 2019 and November 29, 2021. ECF No. [101-1] at 2–46.

23.     Paragraph 9 of the Mortgage, titled "Future Advances," purports to secure the repayment of past, present, and future advances. ECF No. [101-5] at ¶ 9; ECF No. [101] at ¶ 37.

24.     The Mortgage does not specify a maximum principal amount, nor does it itemize or name any specific financial obligations within its scope with particularity or quantity. ECF No. [101-5].

25.     The Mortgage purports to waive Rothfos's obligation to state a maximum principal amount and prohibits H&H from recording a separate instrument stating an agreed-upon maximum principal amount. ECF No. [101-5] at ¶ 9.

26.     Rothfos recorded the Mortgage with the Florida Department of Revenues on June 1, 2022. ECF No. [101-5] at 2.

27.     The recorded version of the Mortgages reflected that the amount of documentary stamp taxes that Rothfos paid to record the Mortgage was $3,500. ECF No. [101-5] at 3.

28.     Following a formula provided by the Florida Department of Revenue, the $3,500 documentary stamp tax represents to the State of Florida and the public that the Mortgage secured a principal amount of $1 million. ECF No. [101-5] at 3; *see also* Fla. Stat. § 201.08(1)(b).

29.     Rothfos never directly communicated with H&H about the Corporate Guaranty and Mortgage. ECF No. [75-1] at 142:5–25; 143:1–17.

30.     On January 7, 2022, CLR and Rothfos entered into an agreement that outlined the debts owed by CLR to Rothfos for both the 2020-2021 and 2021-2022 seasons. ECF No. [101-3] at ¶ 1.

31.     The agreement includes a chart titled "Summary of CLR pre-finance position 2021 22 crop cycle" which details that $19,724,915 worth of CLR's preexisting obligations for the 2021 22 crop cycle stem from purchases and advances made between September 9, 2021 and October 26, 2021. ECF No. [101-3] at 6.

32.     Rothfos states that as of the date of the agreement, it had "transferred $19,725,000 vs. the equivalent of 233 containers of SHG coffee…." ECF No. [101-3] at ¶ 2.

33.     The agreement also memorializes a decision between CLR and Rothfos to roll over a balance of approximately $6,113,975 from the previous season into the 2021-22 season. ECF No. [101-3] at ¶ 1.

## II.     CONCLUSIONS OF LAW

### A.     Declaratory Judgment on the Validity of the Mortgage (H&H Counterclaim Count I).

1.     In Count I of its Counterclaim against Rothfos, H&H argues that it is entitled to a declaratory judgment by this Court finding the Mortgage invalid for failing to comply with the requirements of Fla. Stat. § 697.04.

2.     Fla. Stat. § 697.04 provides that, subject to certain limitations, mortgages may secure the repayment of future advances.

3.     Specifically, the statute provides that real property can serve to secure the repayment of future advances only where: (1) the mortgage detailing this arrangement states on the face of the mortgage the agreed-upon maximum principal amount of advancements; and (2) the mortgagor is empowered to record its own separate instrument also stating the agreed-upon maximum principal amounts of advancements secured by the mortgage. *See* Fla. Stat. § 697.04(1)(b) ("[T]he total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument, plus interest thereon; except that the mortgagor or her or his successor in title is authorized to file for record a notice limiting the maximum principal amount that may be so secured to an amount not less than the amount actually advanced at the time of such filing . . .").

4.     "Where a contract violates state law, the Florida Supreme Court has said that such contract is void." *Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.*, 261 So. 3d 613, 626 (Fla. 3d DCA 2018) (citing *Citizens Nat'l Bank & Tr. Co. v. Stockwell*, 675 So. 2d 584, 587 (Fla. 1996))

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Ste. 510, Miami, FL 33135 • T: 786-837-6787 | F: 305-239-3640 • www.epgdlaw.com

(finding assignment contract void where it violated fee cap in Section 626.854 of the Florida Statutes).

5.      The Eleventh Circuit has extended this rule to mortgages, including circumstances where a mortgage fails to state a maximum principal amount in violation of Section 697.04.

6.      In *United States v. Am. Nat'l Bank of Jacksonville*, 255 F.2d 504, 509 (5th Cir. 1958), the court declined to find that certain obligations were secured because "[t]here was no compliance with the conditions of the Florida statute relating to mortgages securing future advances which requires a statement as to the maximum amount to be secured."

7.      In making this determination, the court held that subsequent obligations were not secured by a mortgage which did not include a maximum secured amount because "[t]o hold that such obligations could be so secured would authorize a husband to so increase the extent of a mortgage lien upon an estate by the entireties without the wife's knowledge as to extinguish the remaining interest in the mortgaged property" and that "[s]uch a construction should not be adopted." *Id.* at 509.

8.      The same reasoning by the court in *Am. Nat'l Bank of Jacksonville*, which was predicated on a lien upon an estate by the entireties, applies to the present dispute, given that the lack of any stated maximum amount to be secured by the Mortgage could allow CLR to increase the extent of the mortgage in the exact same way the court feared the husband could do in *Am. Nat'l Bank of Jacksonville*.

9.      In essence, the need for a stated maximum is meant not only to protect future lienholders, but also to protect parties with an existing interest in the mortgaged property.

10.     Under Florida law, the failure of one or more parties to include statutorily required terms in an agreement may render the agreement invalid and unenforceable. *See, e.g., Gale Force*

*Roofing & Restoration, LLC v. Am. Integrity Ins. Co. of Fla.*, 380 So. 3d 1242, 1245–46 (Fla. 2d DCA 2024) (affirming dismissal of complaint filed by insured's assignee because the assignment of benefits attached to the complaint failed to satisfy the requirements of Section 627.7125, Florida Statutes (2021), finding the subject agreement invalid and unenforceable pursuant to Section 627.7152(2)(d), noting it was "undisputed that the document attached to the complaint contains the uppercase and boldfaced statement required by subsection 627.7152(2)(a)6. But that statement, by itself, does not include all of the terms expressly required under the parallel subsection 627.7152(2)(a)2.... [N]owhere in the document attached to the complaint is 'a provision' that complies with all of the express requirements of subsection (2)(a)2.").

11.     Much like the invalid agreement in *Gale Force Roofing*, the Mortgage in the instant case is invalid because it fails to "include all of the terms expressly required" pursuant to Section 697.04. *See id*.

12.     The express language of Section 697.04 demonstrates the legislature's intent to include the maximum principal amount as a necessary element of "[a]ny mortgage or other instrument given for the purpose of creating a lien on real property…." Fla. Stat. § 697.04 (1)(a)–(b) ("the total unpaid balance so secured at any one time shall not exceed a maximum principal amount which must be specified in such mortgage or other instrument").

13.     While the Future Advances Clause at paragraph 9 of the Mortgage purports to secure the repayment of future advances, it does not, however, provide a maximum principal amount (nor does a maximum principal amount appear anywhere in the Mortgage). ECF No. [101-5] at ¶ 9; ECF No. [101] at ¶ 37.

14.     The Mortgage also purports to waive Rothfos's statutory obligation to state the maximum principal amount and to prohibit H&H from recording a separate instrument stating the maximum principal amount secured in the mortgage. ECF No. [101-5] at ¶ 9.

15.     The Mortgage's failure to include a maximum principal amount violates Section 697.04 of the Florida Statutes.

16.     Moreover, the inclusion of the waiver of Rothfos's obligation to state the maximum principal amount and the prohibition on H&H's ability to record a separate instrument stating the maximum principal amount before Rothfos and CLR entered into an agreement outlining the amounts allegedly owed by CLR to Rothfos is a further violation of the same section.

17.     None of Rothfos's actions in attempting to restrict H&H's statutory rights is consistent with Florida law. These requirements are structural elements necessary for the creation or enforcement of a valid contract and are designed to uphold legal standards and public policy. *See Coastal Caisson Drill Co. v. Am. Cas. Co. of Reading, Pa.*, 523 So. 2d 791, 793 (Fla. 2d DCA 1988), approved *sub nom*. *Am. Cas. Co. v. Coastal Caisson Drill Co.*, 542 So. 2d 957 (Fla. 1989) ("This court has followed the general rule that an individual cannot waive the protection of a statute that is designed to protect both the public and the individual").

18.     These cannot be waived because, in addition to protecting both the public and the individuals, they ensure the contract meets essential legal criteria. *See, e.g., Gale Force Roofing & Restoration, LLC*, 380 So. 3d at 1245–46.

19.     Based on the foregoing, H&H is entitled to a declaratory judgment establishing the rights of the parties in a manner that is consistent with Fla. Stat. § 697.04 by setting aside the Mortgage and rendering it void and unenforceable against H&H.

**B.**     **Declaratory Judgment on the Enforceability of the Corporate Guaranty (H&H Counterclaim Count II).**

20.     In Count II of its Counterclaim, H&H argues that this Court should enter a declaratory judgment finding the Corporate Guaranty unenforceable because it contains a patent ambiguity as to the obligations being secured thereunder.

21.     "The purpose of declaratory relief is to clarify the legal relations between parties to a dispute." *Pediatrix Med. Grp. of Fla., Inc. v. Aetna Inc.*, 18-60908-CIV, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018).

22.     "The court, in effect, declares the parties' legal rights and responsibilities, so that they may conform their future conduct to the law and minimize the risk of future injury." *Id.*

23.     The archetypal situation calling for declaratory relief is a dispute over contract interpretation. By issuing a declaration, the court clarifies the respective duties and obligations of the parties to an agreement before their dispute ripens into an actual breach of the agreement resulting in damages." *Id.*

24.     Here, though referenced throughout, the Corporate Guaranty never defines the term "Obligations"— i.e., what H&H was guarantying and the entire basis for the Corporate Guaranty.

25.     However, paragraph 1 and paragraph 6, which directly conflict with each other, appear to provide two definitions of what H&H is guarantying.

26.     Paragraph 1 states that H&H is guarantying "all present and future obligations."

27.     Paragraph 6(g), on the other hand, states that the Corporate Guaranty is limited to "purchases and advances . . . for the 2021-2022 season."

28.     Accordingly, because the term "Obligations" could be understood to mean all of CLR's debts or just the debts resulting from the 2021-2022, there exists an ambiguity in the Corporate Guaranty that is subject to a declaratory judgment under 28 U.S.C. § 2201.

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Ste. 510, Miami, FL 33135 • T: 786-837-6787 | F: 305-239-3640 • www.epgdlaw.com

29.     Specifically, the ambiguity surrounding the obligations subject to the Corporate Guaranty create a patent ambiguity that render the Corporate Guaranty unenforceable.

30.     "[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." *Crown Mgmt. Corp. v. Goodman*, 452 So. 2d 49, 52 (Fla. 2d DCA 1984).

31.     When courts are faced with a contract that contains a patent ambiguity, they are precluded from allowing the introduction of parol evidence, as doing so would require the court to step into the shoes of the contracting parties and incorporate terms into the agreement not previously contemplated. *See id.* ("Extrinsic evidence is inadmissible if the ambiguity is patent, because such evidence would, in effect, allow the court to rewrite the contract for the parties by supplying information the parties themselves did not choose to include.").

32.     Instead, patently ambiguous language, in the absence of further information in the same document from which the parties' true intent can be gleaned, renders the contract unenforceable. *See Bowein v. Sherman*, 374 So. 3d 895, 897 (Fla. 6th Cir. 2023); *see also Carson v. Palmer*, 190 So. 720, 722 (1939) ("In interpreting instruments courts are always inclined to that interpretation which will give effect to the instrument; but where there is nothing in the instrument to show the grantors' intention as to which lot was to be conveyed, the courts are powerless and can do nought but declare the instrument a nullity.").

33.     This is because one of the central tenets of contract formation—a meeting of the minds between the contracting parties—cannot arise when the parties do not know what they are contracting about. *See Bowein*, 374 So. 3d at 898 ("Here, the conflict in a material term of this contract, its subject matter, renders the contract unenforceable; without a meeting of the minds as

to what real estate was being bought and sold, the contract fails for indefiniteness, and it cannot be revived by parol evidence.).

34.     Ultimately, because the Corporate Guaranty contains a patent ambiguity concerning the obligations secured thereunder, and because a declaratory judgment pursuant to 28 U.S.C. § 2201 is appropriate when there is a dispute as to contract interpretation, this Court finds that the Corporate Guaranty is unenforceable by Rothfos against H&H.

35.     Additionally, the Corporate Guaranty is also invalid for its failure to comply with the requirements of Fla. Stat. § 697.04. *See infra* Section II.D.

### C.     Rothfos's Affirmative Defenses Do Not Defeat H&H's Counterclaim.

#### i.     Lack of Adequate Alternative Remedy and Existence of a Bona Fide Dispute or Controversy in Need of Judicial Interpretation.

36.     For its First and Second Affirmative Defenses, Rothfos argues that H&H's claims for declaratory relief are improper due to the existence of an adequate alternative remedy and the lack of a bona fide dispute or controversy in need of judicial interpretation, respectively.

37.     Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

38.     A party is entitled to a declaration of rights when there is an actual controversy between the parties. *See id.*

39.     "It is well-settled that 'a legal dispute over the correct interpretation of a contract is an appropriate subject for declaratory relief." *Kinsale Ins. Co. v. Mata Chorwadi, Inc.*, Case No.: 22-CV-81446, 2023 WL 4156712, at *2 (S.D. Fla. June 15, 2023), *report and recommendation adopted* 2023 WL 4156713 (citing *Pediatrix Med. Grp. of Fla., Inc.*, Case No. 18-60908-CIV, 2018 WL 4997092, at *6).

40.     Rothfos argues to this Court that because its claims and H&H's defenses address the issues covered by H&H's claim for declaratory judgment, there exists an alternative remedy and no bona fide dispute or controversy exists.

41.     Such reliance on the parties' claims and defenses is misplaced, as this Court is first required to address the threshold issue of whether CLR breached the Purchase Orders.

42.     Would this Court find that CLR did not breach the Purchase Orders, it would not have the opportunity to reach the question about the Mortgage, thus leaving H&H vulnerable to future suits involving the Mortgage. This it simply cannot do.

43.     Accordingly, because there exist multiple bona fide controversies as to the applicability and enforceability of the Mortgage which are ripe for resolution by this Court, Rothfos's First and Second Affirmative Defenses do not preclude this Court from entering a judgment in favor of H&H.

## ii.     **H&H's Has Not Waived its Right to Obtain Relief.**

44.     Rothfos's Third Affirmative Defense asserts that H&H has waived its right to obtain relief pursuant to paragraph 3 of the Corporate Guaranty, which purports to waive certain defenses.

45.     However, H&H is not raising defenses in its counterclaim.

46.     Instead, H&H has sought a declaratory judgment from this Court to determine the enforceability of the Mortgage in its entirety.

47.     Courts recognize affirmative defenses and counterclaims as two discrete aspects of a lawsuit.

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Ste. 510, Miami, FL 33135 • T: 786-837-6787 | F: 305-239-3640 • www.epgdlaw.com

48.     "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters." *Abromats v. Abromats*, Case No. 16-cv-60653, 2016 WL 4917153, at *7 (S.D. Fla. Sept. 15, 2016).

49.     On the other hand, "a counterclaim is essentially a separate cause of action seeking affirmative relief." *Id.*

50.     Given the distinctions between an affirmative defense and a counterclaim, and because nothing in the Corporate Guaranty purports to waive H&H's right to seek relief under the Declaratory Judgment Act, Rothfos cannot rely on waiver as a defense to H&H's counterclaim seeking a declaratory judgment.

51.     Similarly, Rothfos's Fourth Affirmative Defense contends that H&H waived the right to obtain relief pursuant to paragraph 9 of the Mortgage, the Future Advances Clause.

52.     Paragraph 9 purports to waive and relinquish any right under § 697.04 of the Florida Statutes or to otherwise limit the amount of indebtedness that may be outstanding at any time during the term of the Mortgage.

53.     Because H&H contends in Count I of its Counterclaim that the Mortgage is void and unenforceable because it violates Fla. Stat. § 697.04, H&H's focus has been on determining the enforceability of the Mortgage, not asserting any rights that may be afforded to H&H under the statue.

54.     As such, both of Rothfos's waiver arguments fail.

### iii.     H&H's Counterclaim Does Not Rely On or Implicate Parol Evidence.

55.     As its Fifth Affirmative Defense, Rothfos argues that the express and unambiguous terms of the Corporate Guaranty and the Mortgage refute H&H's claims for declaratory relief, and H&H cannot rely on parol evidence to contradict, modify, or vary such terms.

56.     "[T]he parol evidence rule is a rule declaring that parol evidence is inadmissible to vary the terms of a valid written instrument." *Paradise Beach Homes, Inc. v. South Atlantic Lumber Co.*, 118 So. 2d 825, 827 (Fla. 1st DCA 1960).

57.     However, contrary to Rothfos's assertions, the issue of whether the Mortgage is invalid due to violating Fla. Stat. § 697.04 does not require consideration of any evidence beyond the written terms of the Mortgage itself, which are not under dispute.

58.     As the Mortgage indisputably contains the waivers about which H&H seeks declaratory relief in Counterclaim Count I, H&H does not rely on any parol evidence in seeking to declare the Mortgage void and unenforceable.

59.     Accordingly, Rothfos's Fifth Affirmative Defense does not preclude this Court from entering a judgment in favor of H&H.

## iv.     No Amendment, Modification, or Waiver of the Corporate Guaranty.

60.      Rothfos's Sixth Affirmative Defense argues that Count II of H&H's Counterclaim must fail because it is seeking to amend and/or modify the Corporate Guaranty to include additional terms not set forth therein in the absence of a signed writing.

61.     Paragraph 6(b) of the Corporate Guaranty provides that: "No amendment, modification or waiver of any provision of this Guaranty shall be effective unless contained in a writing signed by [Rothfos] and then only to the extent set forth in that signed writing."

62.     This provision solely requires that before the parties amend the terms of the Corporate Guaranty, Rothfos must execute a signed writing that contains the amended terms.

63.     It does not, however, place any restrictions on this Court from interpreting the enforceability and validity of the Corporate Guaranty, or from making a determination as to the rights, duties, and obligations of the parties under the Corporate Guaranty.

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Ste. 510, Miami, FL 33135 • T: 786-837-6787 | F: 305-239-3640 • www.epgdlaw.com

64.     Stated differently, H&H, as the guarantor, has not improperly amended the terms of the Corporate Guaranty without Rothfos's consent in a signed writing, but rather has sought for this Court to enter a declaratory judgment concerning the scope of H&H's obligations under the Corporate Guaranty.

65.     Moreover, because this Court has determined that a declaratory judgment pursuant to 28 U.S.C. § 2201 is appropriate when there is a dispute as to contract interpretation, and because the Corporate Guaranty contains a patent ambiguity concerning the obligations secured thereunder, the Court is neither amending or modifying the Corporate Guaranty, as the Corporate Guaranty is unenforceable given the presence of a patent ambiguity. *See supra* Section II.B.

### v.     H&H Has Standing to Challenge the Mortgage.

66.     As its Seventh Affirmative Defense, Rothfos argues that H&H does not have standing to challenge the Mortgage because Fla. Stat. § 697.04 is meant to protect the rights and interests of third parties.

67.     "Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies." *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1287 (S.D. Fla 2018) (finding standing where plaintiff sought declaratory judgment on prospective injury).

68.     "Similarly, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of 'actual controversy,' that is, a 'substantial continuing controversy between parties having adverse legal interests.'" *Id.*

69.     That controversy must be "real and immediate, and create a definite, rather than speculative threat of future injury." *Id.*

70.     Rothfos is attempting to enforce the Corporate Guaranty and the Mortgage, and seeks over $20 million.

71.     The parties have adverse legal interests, specifically as to the issues of whether the Mortgage is valid, and H&H faces the real and immediate threat of injury, as Rothfos is contemporaneously attempting to enforce the Corporate Guaranty and Mortgage.

72.     Accordingly, Rothfos's argument that § 697.04 is meant to protect the rights and interests of third parties is immaterial to the question of whether the Mortgage violates that statute, and does not preclude this Court from issuing a declaratory judgement as to the validity of the Mortgage.

### vi.     The Future Advances Clause in the Mortgage is Not Severable.

73.     Despite the severability clause in the Mortgage, the Future Advances Clause in paragraph 9 of the Mortgage is not severable.

74.     Because contractual severability is a matter of state law, its applicability in the instant action is controlled by Florida law. *See Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005).

75.     Florida courts have repeatedly held that the question of whether a contract is severable, even in the presence of a severability clause, turns on whether the disputed provision goes "to the very essence of the agreement." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 478 (Fla. 2011); *see Gessa v. Manor Care of Fla., Inc.*, 86 So. 3d 484, 490 (Fla. 2011) (recognizing that the "general standard" for determining severability requires that the "illegal portion of the contract does not go to its essence"); *see also Frankenmuth Mut. Ins. Co. v. Escambia Cnty.*, 289 F.3d 723, 728 (11th Cir. 2002) (applying Florida law and explaining that "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which

are wholly supported by valid legal promises on the other" (quoting 6 Samuel Williston, The Law of Contracts, § 1782 (rev. ed. 1938))).

76.     Rothfos argues that even if this Court were to sever the Future Advances Clause in the Mortgage, the remaining provisions of the Mortgage shall continue to be in full force and effect, because paragraph 37 of the Mortgage contains a severability clause.

77.     However, by finding the Future Advances Clause to be invalid for failing to comply with the requirements of Fla. Stat. § 697.04, this Court would be forced to rewrite the agreement with different terms about what the Mortgage secured were it to abide by the severability clause. *Cf. Shotts*, 86 So. 3d at 478 ("If the provision were to be severed, the trial court would be forced to rewrite the agreement and to add an entirely new set of procedural rules and burdens and standards, a job that the trial court is not tasked to do.")

78.     Because Rothfos is seeking foreclosure pursuant to the Future Advances Clause in paragraph 9 of the Mortgage, invalidating that provision for violating Fla. Stat. § 697.04 goes "to the essence of" the Mortgage, and would require this Court to fill the role of the contracting parties and change the material terms of the Mortgage as they pertain to the security interests created by the Mortgage; this is not a function the Court is able to perform. *See State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986) "[Courts may not] rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties.").

79.     Ultimately, because the Future Advances Clause in the Mortgage is invalid, and because the clause goes to the essence of the Mortgage, Rothfos cannot rely on the Mortgage's severability clause to enforce any remaining provisions of the Mortgage.

### vii. Prior Breach is Not an Actionable Defenses Because H&H is Seeking Declaratory Judgment.

80.     Rothfos argues that if this Court finds that Rothfos's recording of the Mortgage constituted a breach of the Corporate Guaranty and/or Mortgage, then it must find that the breach was excused by H&H's prior breach.

81.     It is a long-standing principle that "prior breach is a valid defense to breach of contract." *CMZ Enterprises, Inc. v. Spyker USA, LLC*, 19-61782-CIV, 2020 WL 9458888, at *4 (S.D. Fla. Mar. 2, 2020).

82.     However, in order to raise the defense of prior breach, the party asserting such defense must be subject to a breach of contract action. *See id.*

83.     Here, H&H is seeking declaratory judgment on Counterclaim Counts I and II–not asserting a breach of contract claim against Rothfos.

84.     Because H&H has not asserted a breach of contract claim against Rothfos, Rothfos may not rely on the affirmative defense of prior breach to defeat H&H's counts for declaratory judgment.

### viii. Equitable Estoppel Cannot be Used to Achieve a Result that Violates Public Policy.

85.     As its Tenth Affirmative Defense, Rothfos argues that it reasonably relied on H&H's representation that it would guarantee and provide security for CLR's obligations to deliver coffee—otherwise Rothfos would never have continued to finance the deal.

86.     However, the doctrine of equitable estoppel does not apply to an agreement which is illegal because it violates an express mandate of law or the dictates of public policy. *See Chmil v. Mediterranean Manors Ass'n, Inc.*, 516 So. 2d 1109 (Fla. 2d DCA 1987) ("The doctrine of

equitable estoppel should not be employed to reach a result which is unlawful or contrary to public policy.").

87.     Because the Mortgage violates Florida law by failing to follow the requirements of Fla. Stat. § 697.04, Rothfos cannot rely on equitable estoppel to enforce the Mortgage.

### ix.      Unclean Hands is Not a Valid Defense to H&H's Claims.

88.      As its Eleventh Affirmative Defense, Rothfos asserts that H&H's claims are barred by the doctrine of unclean hands because it believes that H&H received a significant portion of the funds that were provided by Rothfos to CLR for the purchase of green coffee beans.

89.     "To assert an unclean hands defense, a defendant must show that [] the plaintiff's wrongdoing is directly related to the claim…." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

90.     Here, however, H&H has demonstrated that it was H&H Export—not H&H—which was sourcing coffee for CLR.

91.     Because H&H and H&H Export are two separate business entities, H&H Export's conduct is entirely irrelevant to this Court's interpretation of the Corporate Guaranty and Mortgage as it relates to H&H and Rothfos.

92.     Accordingly, Rothfos cannot rely on the affirmative defense of unclean hands.

### x.      Rothfos's Payment of Additional Documentary Stamp Taxes Does Not Bar H&H's Claims.

93.     Rothfos's Twelfth Affirmative Defense argues that because Rothfos paid an additional $63,190.40 in documentary stamp taxes on October 19, 2023, it has cured any underpayment of its original documentary stamp tax payment of $3,500.

94.     However, Counts I and II of H&H's Counterclaim are not predicated on the value of the documentary tax stamp paid by Rothfos when it recorded the Mortgage.

95.     Instead, H&H is arguing that neither the Mortgage or Corporate Guaranty are enforceable against H&H by Rothfos because they fail to comport with the requirements of Fla. Stat. § 697.04 and, additionally, that the Corporate Guaranty is not enforceable because it contains a patent ambiguity regarding the Obligations secured under the Corporate Guaranty.

96.     Accordingly, Rothfos's presentation to this Court that it paid an additional $63,190.40 in documentary stamp taxes after the Mortgage was recorded is not dispositive of the claims brought under H&H's Counterclaim.

**D.     Damages for Breach of Guaranty (Rothfos's Count I) and Foreclosure on Mortgaged Real Property (Rothfos's Count II).**

97.     In addition to finding the Corporate Guaranty unenforceable against H&H given the existence of a patent ambiguity, *supra* Section II.B, H&H is further prevented from enforcing the Corporate Guaranty because it too violates Fla. Stat. § 697.04.

98.     The applicability of Fla. Stat. § 697.04 is not limited to mortgages.

99.     The statue provides that it applies to "[a]ny mortgage or other instrument given for the purpose of creating a lien on real property …." Fla. Stat. § 697.04(1)(a).

100.    Because the second paragraph on page 2 of the Mortgage states that "this Mortgage is given as security for payment of that certain Guaranty made by Mortgagor to Mortgagee of even date herewith," the Corporate Guaranty was thus contemplated as either an integrated document or an ancillary agreement and, therefore, is an "instrument given for the purpose of creating a lien on real property." ECF No. [101-5] at 3; *see also* Fla. Stat. § 697.04(1)(a).

101.    Given that the primary purpose for issuing the Corporate Guaranty was to create a lien on the Property, the Corporate Guaranty, much like the Mortgage, must abide by the same requirements of Fla. Stat. § 697.04.

102.    Accordingly, because the Mortgage is invalid for its failure to comply with the obligations of Fla. Stat. § 697.04—as it purports to secure the repayment of future advances, but does not provide a maximum principal amount—the Corporate Guaranty, as an "instrument given for the purpose of creating a lien on real property," is equally in violation of Florida law.

103.    Because the Corporate Guaranty does not comply with Fla. Stat. § 697.04, it is hereby rendered unenforceable against H&H.

**E.    Foreclosure on Personal and Intangible Property Collateral (Rothfos's Count III) and Enforcement of Assignment of Rents Provision under Florida Statute § 697.07 (Rothfos's Count IV).**

104.    In addition to seeking foreclosure on H&H's warehouse, Rothfos is also seeking to foreclose on any appurtenant personal and intangible property owned by H&H.

105.    Rothfos argues that H&H's title to its personal and intangible property is subject to the lien of Rothfos's Mortgage and, as a result of CLR's alleged failure to comply with its obligations to Rothfos, Rothfos is now attempting to foreclose on H&H's personal and intangible property under the Mortgage and Corporate Guaranty.

106.    Additionally, Rothfos is seeking to collect any and all rents collected by H&H stemming from its ownership in the Property, pursuant to the Mortgage's Assignment of Rents Provision and the Corporate Guaranty.

107.    However, both the Mortgage and the Corporate Guaranty are unenforceable against H&H because they fail to comply with the requirements of Fla. Stat. § 697.04. *See supra* Sections II.A and II.D.

108.    Specifically, the Mortgage fails to state a maximum principal amount, as required by Fla. Stat. § 697.04.

109.    As a result, the Corporate Guaranty, which was incorporated into or is ancillary to the Mortgage, and is "instrument given for the purpose of creating a lien on real property," is also in violation of Fla. Stat. § 697.04 and is unenforceable against H&H.

110.    Accordingly, given the invalidity and unenforceability of both the Mortgage and Corporate Guaranty, Rothfos is precluded from relying on either to (a) foreclose on H&H's personal and intangible property, and (b) obtaining any and all rents obtained by H&H stemming from its ownership in the Property under the Mortgage's Assignment of Rents Provision.

Dated: November 22, 2024

Respectfully submitted,

By: /s/ Alberto M. Manrara
ALBERTO M. MANRARA
Florida Bar No.: 103088
alberto@epgdlaw.com
OSCAR A. GOMEZ
Florida Bar No.: 58680
oscar@epgdlaw.com
RYAN W. HASTING
Florida Bar No.: 1024694
ryan@epgdlaw.com
EPGD ATTORNEYS AT LAW, P.A.
777 SW 37 Ave., Ste. 510
Miami, FL 33135
T: (786) 837-6787 / F: (305) 718-0687

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 22, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all parties via transmission of Notice of Electronic Filing generated by CM/ECF.

By: /s/ Alberto M. Manrara
ALBERTO M. MANRARA

**EPGD ATTORNEYS AT LAW, P.A.**
777 SW 37th Ave., Ste. 510, Miami, FL 33135 • T: 786-837-6787 | F: 305-239-3640 • www.epgdlaw.com