IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-24000-BECERRA/TORRES

NEUMANN GRUPPE USA, INC. f/k/a
ROTHFOS CORPORATION, a New York
Corporation,

    Plaintiff,

v.

H&H COFFEE INVESTMENTS, LLC,
a Florida Limited Liability Company,
H&H COFFEE GROUP EXPORT CORP.,
a Florida Corporation, CACHITA
LATINA RADIO CORP., a Florida
Corporation, CACHITA UNIVERSAL
STUDIOS INC., a Florida Corporation,
ENTV USA CR PUBLISHING CORP., a
Florida Corporation, and ENTV USA
INC., a Florida Corporation,

    Defendants.

**PLAINTIFF'S RENEWED MOTION TO APPOINT
RECEIVER OVER THE MORTGAGED REAL PROPERTY**

Plaintiff Neumann Gruppe USA, Inc. f/k/a Rothfos Corporation ("Plaintiff" or "Rothfos") hereby files this Renewed Motion to Appoint Receiver over the Mortgaged Real Property, which is the subject of this foreclosure action.[1] In support hereof, Rothfos, through undersigned counsel, states as follows:

**INTRODUCTION**

Nearly two years ago, this Court ordered Defendant H&H Coffee Investments, LLC ("H&H") to file certified rent rolls and expense reports for a warehouse owned by H&H located

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Second Amended Complaint [D.E. 101].

at 7355 N.W. 41st Street, Miami, Florida 33166 ("Mortgaged Real Property") on the 15th of every month. H&H has failed to provide these reports for almost five months – from December 16, 2024 through the present. After conferring with H&H's counsel last month, Rothfos has patiently waited for the overdue reports for more than two weeks. Since then, H&H has only produced excuses instead of the court-ordered reports.

Additionally, Rothfos was a named defendant in a separate but related state-court action wherein an entity ASOP 201 LLC (as successor-in-interest to the original lender) ("ASOP") seeks to foreclose its interest on the same Mortgaged Real Property. Among other things, ASOP seeks $4,637,116.97 in outstanding principal and $2,838,442.13 for interest at the default rate of 21%—more than half the outstanding principal—from November 2021 through October 3, 2024. ASOP claims that the junior and subsequent mortgage between Rothfos and H&H created a non-monetary event of default under its mortgage and promissory note between ASOP and H&H.

This new state-court action, and H&H's delay therein, along with H&H failure to provide Rothfos with certified rent rolls and expense reports, impairs (or threatens to impair) the value of the Mortgaged Real Property and warrants the appointment of a receiver. Accordingly, pursuant to Rule 66 of the Federal Rules of Civil Procedure, renews its motion for an order appointing Jeremy Larkin of NAI Miami | Fort Lauderdale as receiver over the Mortgaged Real Property.

## BACKGROUND

On January 21, 2025, following a bench trial, Rothfos filed its Proposed Findings of Fact and Conclusions of Law After Trial [D.E. 219], which provides a comprehensive analysis of the parties, claims, and relief sought by Rothfos against Defendants H&H, Cachita Latina Radio Corp.,

Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., ENTV USA Inc., and H&H Coffee Group Export Corp.[2]

Rothfos is a coffee importer that advanced millions of dollars to CLR Roasters, LLC ("CLR"), for the delivery of green coffee beans. CLR's performance was guaranteed by H&H and the guaranty was secured by a mortgage on the Mortgaged Real Property. After CLR failed to deliver more than $18 million dollars of coffee, Rothfos brought this action initially against H&H for damages and to foreclose on the Mortgaged Real Property, which secured the guaranty. Later, Rothfos added the warehouse's tenants (the Defendant Tenants) as foreclosure defendants.

### A.    The Parties and CLR Roasters, LLC

Rothfos was a company that was involved in importing "green coffee" and selling it to roasters in the U.S. and Canada, who, in turn, sold the coffee to retailers and consumers. Joint Pretrial Stipulation. *See* Proposed Findings of Fact and Conclusions of Law After Trial [D.E. 219] at ¶ 1.

Neumann Gruppe USA, Inc. acquired Rothfos by merger as of December 31, 2024. On January 2, 2025, this Court granted Rothfos' unopposed motion to substitute Neumann Gruppe USA, Inc. as the party Plaintiff in this matter. *Id.* at ¶ 2.

H&H is a Florida limited liability company that owns a warehouse located at 7355 N.W. 41st Street, Miami, Florida 33166 (the "Mortgaged Real Property"). *Id.* at ¶ 3.

Defendants H&H Coffee Group Export Corp., Cachita Latina Radio Corp., Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., and ENTV USA Inc. (collectively, the "Defendant Tenants") operate businesses out of the Mortgaged Real Property pursuant to a lease dated July 21, 2021 with H&H as landlord. *Id.* at ¶ 4.

---

[2] Cachita Latina Radio Corp., Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., ENTV USA Inc., and H&H Coffee Group Export Corp. are collectively, "Defendant Tenants."

Alain Piedra Hernandez (hereinafter, "Mr. Piedra"), a Florida resident, is the sole member of H&H and is the President of each of the Defendant Tenants. *Id.* at ¶ 5.

Mr. Piedra is a stockholder and/or operator of Hernandez Export and Beneficio Solecafe. *Id.* at ¶ 10.

### B.     The Purchase Orders and Wire Transfers

Between February 2019 and December 2021, Rothfos and CLR entered into the 49 purchase orders that are the subject of this lawsuit (the "Purchase Orders"), by which CLR agreed to deliver to Rothfos 147,950 bags of green coffee. *Id.* at ¶ 11. CLR's President, David Briskie, testified at trial that CLR accepted each of the Purchase Orders (Pl's Trial Ex. 4), including the Purchase Orders that were not signed by CLR. *Id.*

Seven (7) of the Purchase Orders initially required delivery to be made prior to the 2021/2022 coffee season. *Id.* at ¶ 13. After CLR failed to timely deliver the coffee owed under those seven (7) Purchase Orders, Rothfos and CLR agreed to "roll over" the unfulfilled obligations to the 2021/2022 coffee season. *Id.* at ¶ 14.

The remaining 42 Purchase Orders called for delivery during the 2021/2022 coffee season and described the coffee to be delivered thereunder as "New Crop 2021/2022[.]" *Id.* at ¶ 15.

From September 10, 2021 to March 17, 2022, Rothfos made nineteen (19) cash advances to CLR in the total amount of $21,700,000 for the purchase of green coffee beans. *Id.* at ¶ 17.

### C.     The Workout Agreement and CLR's Deal Point Memo

On or about January 7, 2022, Rothfos and CLR executed a document titled "2020/2021 and 2021/2022 Coffee Program Assessment and Acknowledgement," which is referred to by the parties as the "Workout Agreement." *Id.* at ¶ 20.

In the Workout Agreement, Rothfos and CLR agreed to "roll over" previously unfulfilled coffee orders to the 2021/2022 coffee season. *Id.* at ¶ 21. The Workout Agreement stated that

4

"the remaining roll over balance" of those contracts was "approximately $6,113,975." *Id.* at ¶ 21. The "rolled" Purchase Orders included numbers 38905, 38906, 38907, 39783, 40181, 40866, 40879, 41455, and 41456. *Id.* at ¶ 21. The Workout Agreement further stated that, "[a]s of today, for crop year 2021-22, Rothfos Corporation has transferred $19,725,000 vs. the equivalent of 233 containers of SHG coffee …." *Id.* at ¶ 22. At trial, Mr. Briskie testified that the figures set forth in the Workout Agreement were accurate as of the date of the Agreement. *Id.* at ¶ 23.

On June 19, 2022, Mr. Briskie sent Rothfos a "Deal Point Memo," in which he stated that Rothfos had paid CLR: (i) "approx. $6.1 million" for "2019/2020 crop season" contracts that were rolled over to the 2021/2022 crop season pursuant to the Workout Agreement, and (ii) "approx. $11,975,000" in additional advances for coffee for the 2021/2022 crop season that remained unfulfilled. *Id.* at ¶ 25. The Deal Point Memo further stated that "approx. $18 million" had been paid by Rothfos to CLR for coffee that CLR had not delivered. *Id.* at ¶ 26. According to the Deal Point Memo, the total amount that Rothfos had advanced to CLR that was not delivered was approximately $18,075,000 (i.e., $6,100,000 in unfulfilled, rolled over purchase orders + $11,975,000 in unfulfilled advances = $18,075,000). *Id.* at ¶ 27. At trial, Mr. Briskie testified that the figures set forth in the Deal Point Memo were accurate as of the date of the Deal Point Memo. *Id.* at ¶ 28.

D. **The Guaranty and the Mortgage**

In the fall of 2021, Rothfos grew concerned about the amount of money it had paid to CLR against unfulfilled green coffee contracts and informed CLR that it was looking for additional security. Mr. Briskie acknowledged at trial that there was "at least" $10 million in outstanding advances from Rothfos to CLR in or around December 2021. *See* D. Briskie Trial Testimony. *Id.* at ¶ 35. As of December 23, 2021, Rothfos was unwilling to advance any additional money to CLR without collateral being provided. *Id.* at ¶ 36. On December 24, 2021, H&H executed the

Corporate Guaranty (hereinafter, the "Guaranty") and the Mortgage in favor of Rothfos. *Id.* at ¶ 37.

The Guaranty and the Mortgage were offered by H&H to CLR. H&H's corporate representative, Mr. Piedra, testified that Rothfos did not discuss the Guaranty or the Mortgage with H&H prior to H&H's execution of those documents. Instead, Mr. Piedra testified that H&H's understanding of the terms and conditions of the Guaranty and the Mortgage came from the language of those documents and its discussions with CLR. *Id.* at ¶ 38.

Pursuant to the terms of the Guaranty, H&H "absolutely, unconditionally and irrevocably guarantee[d]" "all present and future obligations, liabilities, covenants and agreements required to be observed, performed, or paid by CLR[.]"Paragraph 6(g) of the Guaranty limited H&H's liability to "purchases and advances" made by Rothfos for the "2021-22 season unless extended by agreement of the parties." *Id.* at ¶ 39. The Mortgage was given as security for H&H's obligations under the Guaranty, and provided Rothfos with a lien on the Mortgage Real Property and all appurtenant personal and intangible property affixed to or associated with the Mortgaged Real Property. *Id.* at ¶ 42.

### E. Trial

From January 7-9, 2025, this Court held a bench trial on Rothfos' claims and H&H's defenses. As noted in Rothfos' Proposed Findings of Fact and Conclusions of Law, Rothfos believes that the evidence and arguments at trial show that is has established principal damages owed by H&H under the Guaranty and the Mortgage in the amount of $19,054,375.91. *Id.* at ¶ 144. Default interest continues to accrue at a rate of $12,998.74 per day on the total principal balance owed by H&H. *Id.* at ¶ 146. This Court's findings of fact and conclusions of law following trial are forthcoming.

  **F. H&H is Undermining Rothfos' Foreclosure Rights and Jeopardizing the Value of the Mortgaged Real Property.**

   **1. H&H is Delinquent on its Obligation to File Certified Rent Rolls and Expense Items.**

On June 16, 2023, this Court entered its Order on Motion for Sequestration of Rents [D.E. 38], which requires H&H to file certified rent rolls and expense reports associated with the Mortgaged Real Property, which are due on the 15th of every month. Decl. of Jason P. Hernandez, Esq. ("JPH Decl."), attached as **Exhibit 1** at ¶ 2.

Despite H&H's obligations, H&H last provided Rothfos with a certified rent roll for the Mortgaged Real Property on December 16, 2024, along with a supplemental production for that certified rent roll on December 20, 2024. *Id.* at ¶ 3. The last certified rent roll covered the reporting period of November 16, 2024 to December 15, 2024. *Id.* at ¶ 4.

On April 14, 2025, Rothfos, through counsel, advised H&H of its failure to provide all certified rent rolls and requesting same for the period of December 16, 2024 through April 15, 2025. *Id.* at ¶ 4. On May 2, 2025, H&H's counsel sent an email with an uncertified Excel spreadsheet listing certain expenses for the Mortgaged Real Property for the months of January through March, but not for April. *Id.* at ¶ 10. The spreadsheet contains no information about collected rents, nor did H&H provide a receipt for each expense reflected on every certified rent roll, as this Court ordered. *Id.* at ¶ 10. As of the filing of Rothfos' Renewed Motion to Appoint a Receiver over the Mortgaged Real Property, H&H has not provided Rothfos with any certified rent rolls for period of December 16, 2024 to the present. *Id.* at ¶ 11.

   **2. H&H Continues to Squander the Value of Mortgaged Real Property.**

Likewise, Rothfos is a named defendant in a separate but related state-court action in the case of *ASOP 201, LLC, a Florida limited liability company, as successor-in-interest to Pacific National Bank v. H&H Coffee Investments, LLC et al.*, (Case No. 2024-019197-CA-01 (11)),

pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, wherein an entity, ASOP 201 LLC (as successor-in-interest to the original lender) ("ASOP"), seeks to foreclose on the same Mortgaged Real Property. Among other things, ASOP seeks $4,637,116.97 in outstanding principal and $2,838,442.13 for interest at the default rate of 21%—more than half the outstanding principal—from November 2021 through October 3, 2024.

Those ongoing foreclosure proceedings, while Rothfos litigates this action, have impaired or threaten to impair the value of the Mortgaged Real Property to Rothfos' detriment, which has diligently pursued its claims against H&H and the Defendant Tenants.[3]

## **LEGAL STANDARD**

"[F]ederal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction." *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *accord Comerica Bank v. Everglades Dressage, LLC*, No. 20-CIV-81360-RAR, 2021 WL 911065, at *2 (S.D. Fla. Feb. 28, 2021). The Federal Rules of Civil Procedure provide that "[t]hese rules govern an action in which the appointment of a receiver is sought ... [b]ut the practice in administering an estate by a receiver ... must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. Pro. 66; *see also Comerica Bank*, 2021 WL 911065, at *2. Rule 66 grants district courts "'broad discretion to decide whether it is appropriate to appoint a receiver'" over assets in dispute in litigation. *PNC Bank, N.A. v. Prime Props. of Clearwater, Inc.*, No. 8:16-cv-747-T-23TGW, 2016 WL 11493324, at *1 (M.D. Fla. June 21, 2016) (quoting Moore's Federal Practice, § 66.04[1][b] (3d ed. 2015)).

While "no precise formula exists for determining when a court should resort to a receiver," *Hawes v. Madison Ave. Media, Inc.*, No. 11-CV-81025, 2012 WL 12861096, at *2 (S.D. Fla.

---

[3] In the state-court actions, H&H has challenged Rothfos' ability to timely and speedily seek discovery, which has allowed Plaintiff ASOP's claims for default interest to accrue while diminishing Rothfos' equity in the Mortgaged Real Property.

June 26, 2012) (citation omitted), "federal courts may consider a variety of factors in determining whether a receiver is warranted, including: (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact serve the plaintiff's interests." *Regions Bank v. Legal Outsource PA*, No. 2:14–cv–476–FtM–29DNF, 2014 WL 7014559, at *5 (M.D. Fla. Dec. 11, 2014) (citing *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291); *accord Comerica Bank*, 2021 WL 911065, at *2.

## ARGUMENT

Although the appointment of a receiver is an "extraordinary equitable remedy" available "only when there is no remedy at law or the remedy is inadequate," it is appropriate here, for the reasons that follow. *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011).

### A. The Parties Agreed to a Receivership Provision in the Mortgage.

The Mortgage provides for the appointment of a receiver "as a matter of right" in the event of default or upon the filings of a foreclosure complaint, both of which have occurred:

> In the event of a default in any of the terms of the Guaranty or of this Mortgage, or of the filing of a complaint to foreclose this or any other mortgage encumbering the Mortgaged Property, Mortgagee(s) shall immediately and without notice be entitled, **as a matter of right** and without regard to the value of the Mortgaged Property or to the solvency or insolvency of the parties, to the appointment of a receiver of the Mortgaged Property and of the rents, issues and profits thereof, with the usual power of receivers in such cases, and such receiver may be continued in possession of the Mortgaged Property until the time of the sale thereof, under such foreclosure, and until the confirmation of such sale by the Court.

*See* Mortgage, attached as **Exhibit 2** at ¶ 25 (emphasis added)].

H&H's "affirmative consent . . . to the appointment of a receiver weighs heavily towards finding such action justified." *Comerica Bank*, 2021 WL 911065, at *2 (quotations and citation

9

omitted). "The receivership provisions, although not dispositive are a factor of substantial weight in balancing the equities." *Id*. (cleaned up); *see also 3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*, No. 3:14–cv–632–J–34PDB, 2014 WL 12621231, at *2 (M.D. Fla. Dec. 8, 2014) ("[T]he receivership provision in the Mortgage weighs heavily in favor of granting the requested relief."). Accordingly, this factor heavily favors appointing a receiver.

> B.    **H&H has Engaged in Fraudulent Conduct.**

H&H has engaged in fraudulent conduct in this litigation which merits the appointment of a receiver. As an initial matter, H&H's failure to provide Rothfos will almost five months of certified rent rolls raises a serious concern of H&H's ongoing relationship with the Defendant Tenants, H&H's involvement or oversight of the Mortgaged Real Property, and H&H's failure to abide by this Court's orders. Likewise, if the allegations in the state-court foreclosure action prove true, the additional mortgages on the Mortgaged Real Property violate several provisions in the Mortgage that bar H&H from selling the Mortgaged Real Property without Rothfos' consent. For example, H&H cannot cause additional liens to be filed against the Mortgaged Real Property:

> 13. Further Liens. Mortgagor will not permit any other liens to be filed against the Mortgaged Property [and] if any such liens are filed, whether paramount or subordinate to this Mortgage, the Mortgagor will cause such liens to be immediately and fully and finally discharged as a lien against the Mortgaged Property or fully and finally transferred in accordance with all applicable requirements of Florida law from a lien against the Mortgaged Property to a lien against other security posed by Mortgagor.

*See* Mortgage, attached as **Exhibit 2** at ¶ 13. Nor can H&H obtain additional financing or transfer the Mortgaged Real Property without Rothfos' prior consent:

> 14. Additional financing. Mortgagor agrees that the Mortgaged Property shall not be further encumbered by the cost of additional financing or as collateral for any existing or future obligations to any party other than Mortgagee. Encumbrance of the Mortgage Property, or any thereof, as collateral for any additional financing without the prior written consent of the Mortgagee (s), which consent the Mortgagees) may withhold in its absolute and sole discretion, shall be a default of this Mortgage.

> 15. <u>Transfer and Management of Mortgaged Property</u>. This Mortgage is personal to the Mortgagor, and the conveyance of the Mortgaged property, or any part thereof, without the prior written consent of the Mortgagee, which consent may be withheld at the sole and absolute discretion of Mortgagee(s), shall, at the Mortgagee's option, be a default of this Mortgage. This mortgage may be subordinate to If (sic) a loan to HH&I by Pacific Nation Bank (PNC) and or SBA is advanced to HH&I to the sum of One-Million, five hundred thousand dollars ($1,500,00.00) and is recorded, this mortgage shall then be subordinate to the PNC/SBA resulting in the lien of this mortgage to be a fourth (4th) lien on the subject property.

*See* Mortgage, attached as **Exhibit 2** at ¶¶ 14-15.

H&H has thus engaged in a consistent pattern and practice of fraudulent conduct with respect to the Mortgaged Real Property that weighs in favor of appointing a receiver.

### C.   There is Imminent Danger that Property Will be Lost or Squandered.

The third factor also favors a receiver. As set forth above, H&H's failure to provide Rothfos with certified rent rolls for almost five months fails to provide Rothfos with any security or comfort that H&H is satisfying any of its obligations as a property owner. Likewise, the ongoing state-court foreclosure action, wherein Rothfos is a named defendant, creates an imminent risk where Rothfos' ability to foreclose on the Mortgaged Real Property may be lost if a superior lienholder is able to foreclose its junior interest. Any further loss of value will injure Rothfos dollar for dollar.

### D.   Legal Remedies are Inadequate.

This factor also favors granting the motion. H&H's pattern of conduct demonstrates that legal remedies are inadequate to protect Rothfos' interest in the Mortgaged Real Property. For example, legal remedies would not prevent Mr. Hernandez and H&H from trying to further encumber the property or fail provide Rothfos required information concerning the operations and finances of H&H. The only adequate remedy is giving a receiver sole legal authority over the Mortgaged Real Property.

### E.   Potential Harm to Rothfos Outweighs Any Potential Injury to H&H.

The balance of potential harms weighs in favor of appointing a receiver, because the

Mortgaged Real Property is underwater and H&H is diminishing the value of Rothfos's collateral and impairing its rights under the Mortgage. Courts recognize that a showing of inadequate security tips the balance in favor of the appointment of a receiver, because it is the creditor/lienholder, and not the property owner, who bears the burden of property owner's wrongdoing or neglect. *See Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n*, 787 F. Supp. 250, 254 (D.D.C. 1992) (appointment of a receiver is appropriate where value of real property is inadequate to satisfy debt, financial condition of debtor is tenuous, and debt remains unpaid); *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292-93 (E.D. Cal. 1991) (appointment of a receiver is warranted where "the adequacy of the security is substantially doubtful and that the financial strength of the defendants is at least doubtful").

### F.  Rothfos is Likely to Succeed on the Merits.

Rothfos is likely to succeed on the merits because as the evidence and arguments submitted at trial support Rothfos' claim for damages against H&H in the amount of $19,054,375.91 and default interest from H&H in the amount of $10,970,935.39 (which accrues at the default interest rate of 24.9% per annum). Default interest continues to accrue at a rate of $12,998.74 per day on the total principal balance owed by H&H. Likewise, Rothfos also seeks foreclose on H&H's and the Defendant Tenants' interests in the mortgaged real property.

### G.  The Receivership Will Serve Plaintiff's Interests.

Finally, a receivership will serve Rothfos' interests by divesting H&H of any legal authority to further encumber the Mortgaged Real Property before this Court has entered a final judgment in this case and by ensuring that there is no unnecessary diminution of value.

### H.  Jeremy Larkin of NAI Miami Fort | Lauderdale Should be Appointed Receiver.

Rothfos respectfully requests the Court to appoint Jeremy Larkin, the Chief Executive Officer of NAI Miami Fort | Lauderdale, a commercial real estate advisory firm, as receiver.

Mr. Larkin is a licensed Florida real estate professional with more than 30 years of experience in real estate and business management, including property management. In his career, he has been responsible for more than $1 billion in leasing and sales transactions of more than 5 million square feet of space. In addition, Mr. Larkin has previously been appointed a receiver by state and federal courts in Florida. Mr. Larkin's biography is attached as **Exhibit C** to the JPH Declaration.

**WHEREFORE**, Rothfos respectfully requests that this Court enter an Order appointing Jeremy Larkin Post as receiver to take possession of the Mortgaged Real Property and convey to him the following powers and duties and for the issuance of such further orders as are necessary and proper. The specific powers and duties of the receiver are requested as follows:

A. To exclusively collect, control, manage, conserve, and protect the Mortgaged Real Property;

B. To operate the business constituting the Mortgaged Real Property, including the authority to assume legal control over the Mortgaged Real Property and to collect and receive all cash, current and past due earnings, revenues, rents, issues, profits, income, and cash collateral derived from the Mortgaged Property, and to use such cash solely for the purposes of maintaining and protecting the Mortgaged Real Property;

C. To collect and review all books and records relating to the Mortgaged Real Property, including but not limited to books and records in H&H's possession;

D. To inspect the Mortgaged Real Property, and take all actions necessary to maintain and safeguard the Mortgaged Real Property and to prevent the danger of waste, loss, substantial diminution in value, dissipation, or impairment of the Mortgaged Real Property;

E. To take all necessary actions to ensure that H&H, tenants, sub-tenants, invitees, or licensees of the Mortgaged Real Property have obtained all necessary licenses, permits, and authorizations from the applicable governmental authorities for their use the Mortgaged Real Property;

F. To evict, expel, bar, and otherwise remove all persons and entities from the Mortgaged Real Property that are occupying the Mortgaged Real Property without a valid lease, sublease, usage agreement, license, or permit;

G. Upon approval by this Court, to terminate any lease, sublease, or other usage agreement for the Mortgaged Real Property;

H. To market, negotiate, and propose to the Court for its final approval any leases, subleases, licenses, or other usage agreements for the Mortgaged Real Property;

I. To have the authority to withdraw any applications to refinance or further encumber the Mortgaged Real Property;

J. Upon subpoena, to compel a person to submit to examination under oath, or to produce and permit inspection and copying of designated records or tangible things, with respect to the Mortgaged Real Property or any other matter that may affect administration of the receivership;

K. To seek and obtain instruction from the Court concerning the Mortgaged Real Property, exercise of the receiver's powers, and performance of the receiver's duties; and

L. To grant Rothfos such other and further relief as this Court deems just and proper.

**CERTIFICATION OF GOOD-FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that on, May 2, 2025, counsel for the movant conferred via phone conference with counsel for Defendants H&H Coffee Investments, LLC, Cachita Latina Radio Corp., Cachita Universal Studios Inc., ENTV USA CR Publishing Corp., ENTV USA Inc., and H&H Coffee Group Export Corp. concerning the relief sought in this motion. They oppose the relief sought in this motion.

Date: May 2, 2025

Respectfully submitted,

By: /s/ *Jason P. Hernandez*
JASON P. HERNANDEZ, FL Bar 18598
jhernandez@stearnsweaver.com
JOSE G. SEPULVEDA, FL Bar 154490
jsepulveda@stearnsweaver.com
MATTHEW M. GRAHAM, FL Bar 86764
mgraham@stearnsweaver.com
RYAN M. WOLIS, FL Bar 1019034
rwolis@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Miami, FL 33130
Telephone: (305) 789-3200

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 2, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all parties via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Jason P. Hernandez*
JASON P. HERNANDEZ